UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO.   2:21-cr-83-JLB-NPM

MARK A. GYETVAY

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

The United States of America respectfully submits this response in opposition to the *Defendant's Motion to Dismiss the Indictment* ("Defendant's Motion"), filed on October 7, 2021, pursuant to Fed. R. Crim. P. 12(b).   Doc. 33.   In that motion, Defendant contends that dismissal of all charges is warranted on either statute of limitations grounds or because certain counts are multiplicitous.

Defendant's Motion should be denied because each of the counts in the indictment was brought within the time prescribed by the applicable statute of limitations, as extended by various tolling provisions in Titles 26 and 18.  And contrary to Defendant's claims, the indictment need not allege those tolling provisions. Finally, Defendant's multiplicity arguments should be rejected because each count in question requires proof of a distinct element, thus rendering all of the charges appropriate under the governing multiplicity analysis.

**BACKGROUND**

On September 22, 2021, a Fort Myers grand jury returned a fifteen-count indictment charging the Defendant with various tax and tax-related charges. In short, Defendant was charged with orchestrating a decade-long scheme involving his willful failure to report over $40 million of income to the IRS, and hiding over $93 million of assets in secret Swiss Bank accounts in the names of nominee foreign corporations and a nominee "beneficial owner," in the form of his ex-wife. *See* Indictment at ¶¶ 14, 11-12.  As the indictment alleges, Gyetvay's scheme culminated when he filed a false submission to the IRS under the Streamlined Foreign Offshore Procedures, a voluntary disclosure program that allowed eligible U.S. taxpayers to pay no penalties if their previous failure to comply with their tax and other reporting obligations was not willful.  *Id.* at  ¶¶ 33-38.

The Indictment specifically charged Gyetvay with the following crimes: aiding or assisting in the preparation false tax returns, in violation of 26 U.S.C. § 7206(2); tax evasion, in violation of 26 U.S.C. § 7201; failing to file tax returns, in violation of 26 U.S.C. § 7203; making a false statement, in violation of  18 U.S.C. § 1001; failing to file required Foreign Bank Account Reporting documents, in violation of 31 U.S.C. §§ 5314 and 5322(a); and wire fraud, in violation of 18 U.S.C. § 1343. *Id.* at ¶¶ 39-52.

With respect to the failure-to-file charges, Gyetvay was charged with failing to file personal income tax returns for the tax years 2009 through 2014.  *Id.* at ¶¶ 25-30. In fact, although Gyetvay eventually filed returns for those tax periods years late, he did not begin doing so until August 2015, after learning that one of the Swiss banks

that maintained his secret accounts was preparing to turn over information to the IRS. *Id.* at ¶ 37. By that time, of course, his failure-to-file crimes had been completed. *See United States v. Sansone*, 380 U.S. 343 (1965) (tax evasion "crime was complete as soon as the false and fraudulent understatement of taxes . . . was filed," and intent to report income at later time was no defense); *United States v. Klausner*, 80 F.3d 55, 63 (2d Cir. 1990) (eventual filing of tax returns "does not negate willfulness in [defendant's] earlier attempts to evade his income tax liability").

With respect to the tax return Gyetvay helped to prepare and file (in late 2011) for the 2007 tax year, Gyetvay falsely omitted from that tax return over $19.9 million of income stemming from his exercise of a stock option in connection with his work as CFO for a Russian gas company. *See* Exhibit A (Gyetvay's exercise of stock option agreement). And when selling a large block of the shares he received upon exercising the option, Gyetvay directed that over $9 million of the cash he received be deposited into one of his secret Swiss bank accounts. *Id.* (directing that funds be sent to nominee company "Opotiki," at Coutts Bank in Switzerland). He also directed that the remainder of the shares he received be listed in the name of another nominee entity he controlled—Felicis Commercial Corp. *Id.*; see also Indictment at ¶ 21. To this day, Gyetvay has failed to report to the IRS the income he received from that transaction during the 2007 tax year, or pay the millions of dollars of taxes he was obligated to pay by April 15, 2008.

## MEMORANDUM OF LAW

### I.   ALL CHARGES WERE BROUGHT WITHIN THE APPLICABLE LIMITATIONS PERIOD.

#### A.   Statutory Provisions Apply to Toll the Applicable Limitations Periods.

The statute of limitations for all of the Title 26 offenses charged in the Indictment is six years, *see* 26 U.S.C. § 6531(2)-(4), while the Title 18 and Title 31 offenses are governed by a five-year limitations period. *See* 18 U.S.C. § 3282. Gyetvay argues that all charges in the indictment are time-barred.  All of the offenses charged in the indictment, however, are subject to one or more statutory tolling provisions that make the charges timely.

First, Title 26 contains a tolling provision that applies to Title 26 offenses and conspiracies to defraud the United States. That provision, 26 U.S.C. § 6531(8), tolls the statute of limitations clock (without the need for a judicial order) for all periods of time during which a defendant is "outside of the United States," for whatever reason. *Id.* ("The time during which the person committing any of the various offenses arising under the internal revenue laws is outside the United States . . . shall not be taken as any part of the time limited by law for the commencement of such proceedings."); *see United States v. Edkins*, 421 Fed. App'x 511, 513 (6th Cir. 2010) (tax evasion statute of limitations tolled for period defendant resided in Bahamas); *United States v. Myerson*, 368 F.2d 393, 395 (2d Cir. 1966) ("The statute is unambiguous on its face and clearly covers appellant's absences. There is nothing unreasonable or arbitrary about the

tolling of the statute of limitations during an offender's absence from the country"); *United States v. Levine*, 249 F. Supp. 3d 732, 737–38 (S.D.N.Y. 2017) (limitations period tolled for periods defendant was outside the United States, "for whatever reason"); *United States v. Ohle*, 678 F. Supp. 2d 215, 230 (S.D.N.Y. 2010) ("The tolling provision is applicable even if the defendant is outside of the country for business or pleasure trips."); *United States v. Yip*, 248 F. Supp. 2d 970, 973 (D. Hawai'i 2003) (upholding tolling based on business travel).[1]

Second, the limitations periods can be tolled if the United States makes an official request for evidence to a foreign country. Specifically, 18 U.S.C. § 3292(a)(1) tolls or "suspends" the statute of limitations for Title 18, Title 26, and Title 31 offenses if the district court enters an order before the return of the indictment finding that an "official request" for foreign evidence has been made, and that it appears to the court that evidence of the offenses under investigation is located in the foreign country. Tolling under this provision ends when the foreign authority takes "final action" on the request, but the suspension period may last no longer than three years. 18 U.S.C. § 3292(b), (c)(1).

---

[1] Gyetvay incorrectly suggests that the exclusion under 26 U.S.C. § 6531(8) is limited to those situations where the defendant is outside the country as a fugitive. *See* Defendant's Motion at 3 (observing that time is excluded from statute of limitations calculation when the defendant is "outside the United States within the meaning of Section 3290 of Title 18"). The actual text of the statute provides that tolling is appropriate for "[t]he time during which the person committing [the tax offenses] is outside the United States or is a fugitive from justice within the meaning of Section 3290 of Title 18 of the United States Code." The statute thus provides for tolling when the defendant is *either* outside the United States *or* a fugitive as defined by Section 3292.

The Court entered orders tolling the statute of limitations in this matter. As noted in our previously-filed motion with respect to the Speedy Trial Act, Doc. 26, during the course of the grand jury investigation of Gyetvay (which remains ongoing), Judge Sheri Polster Chappell signed two orders tolling the running of the statute of limitations for the offenses under investigation. Those orders, entered on April 3, 2020 and April 15, 2021, respectively, were based on Judge Chappell's findings, pursuant to 18 U.S.C. § 3292, that the United States had made "official requests" to foreign countries for evidence of the offenses under investigation by the grand jury, and that it "reasonably appear[ed]" that evidence of the offenses under investigation was located in, among other places, Switzerland and the United Kingdom. *See* Doc 26, Exhibit A at ¶¶ 1, 4-7 (order dated April 3, 2020, based on Swiss Request); Exhibit B at ¶¶ 1, 4-5 (order dates April 21, 2021, based on United Kingdom Request).

Both the Swiss and United Kingdom Requests remain outstanding. Consequently, under 18 U.S.C. § 3292, the running of the statutes of limitations for the charged offenses was suspended beginning on April 3, 2020, when Judge Chappell signed the first tolling order, and continues tolled to this day.

### B. The Charges Against Gyetvay are Timely Under the Tolling Provisions.

Gyetvay's challenge to the timeliness of the Title 18 and Title 31 charges contained in Count Ten through Count Fifteen is unavailing.  The reason for this is simple: Judge Chappell's tolling order of April 3, 2020 suspended the running of the statute of limitations for all of the charges as of that date. Because Gyetvay concedes

that the five-year statute of limitations for Counts Ten through Fifteen expired no earlier than June 25, 2020 (Defendant's Motion at 8-10), his limitations challenge with respect to those counts must fail.

Moreover, with respect to each of the Title 26 charges contained in Counts One through Nine of the Indictment, the Government will establish at trial that Gyetvay was outside the United States for a sufficient number of days between 2011 and April 3, 2020, (when Judge Chappell signed the initial tolling order) to render each of the tax charges timely. Stated otherwise, the Government will prove at trial, through various travel and other records, that Gyetvay was not in the United States for the six-year period required for the statute of limitations to have expired on any of the tax counts. Given this offer of proof—which the Government is permitted to satisfy at trial to meet Gyetvay's affirmative defense—Gyetvay's current attack on the timeliness of the Title 26 charges must fail.[2] *United States v. Levine*, 249 F. Supp. 3d at 737–38 (dismissal of tax charges not warranted where Government proffers that it will prove

---

[2] Gyetvay's contention that the Government conceded that he spent more than 330 days in the United States (Defendant's Motion, at 3-4) is factually wrong and reflects a misunderstanding of the test pursuant to which a United States taxpayer may properly qualify for the Streamlined Foreign Offshore Procedures (SFO) based on time spent outside or inside the country. The test is a "non-residency" test, requiring that in order to qualify, a taxpayer and his or her spouse both must have resided outside the United States for at least 330 full days in one of the preceding three years. Indictment at ¶ 35. But the mere fact that Gyetvay did not satisfy that non-residency test, by being outside the United States for 330 full days, does not mean, as he suggests (Defendant's Motion, at 4), that he spent 330 days *in* the United States. On the contrary, the proof at trial will show that Gyetvay was outside the United States for between approximately 100-235 days for each year between 2011 and 2019. That outside-the-United States status disqualified him from SFO, and also served to toll the tax statutes of limitations sufficiently under 26 U.S.C. § 6531(8).

outside-the-United States tolling at trial); *United States v. Ohle*, 678 F. Supp. 2d at 230 (same); *United States v. Stein*, 429 F. Supp. 2d 633, 638 (S.D.N.Y. 2006) (same).

## C.   The Indictment Need Not Allege the Application of the Tolling Provisions.

Gyetvay also argues in his motion that the Court should dismiss all charges against him because the indictment does not allege any exception or tolling provisions for the applicable statutes of limitations.  But an indictment is not required to contain such allegations.

Because a statute of limitations defense is an affirmative defense to which the United States may respond with proof at trial, statutory exceptions to the statute of limitations—such as suspension or tolling provisions—need not be alleged in the Indictment. *United States v. Sisson*, 399 U.S. 267, 287 (1970) ("It has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses."). Indeed, long-settled Supreme Court and Circuit Court authority make clear that the failure of an indictment to reference statute of limitations exceptions or tolling does not subject that indictment to dismissal. *United States v. Cook*, 84 U.S. 168, 178, 179-80 (1872) (court may not dismiss indictment just "because it appears on its face that it was not found within the [limitations] period" because to do so "would deprive the prosecutor of the right to reply or give evidence . . . that the defendant . . . was within the exception [to the limitations period]"); *Capone v. Archibald*, 65 F.2d 130, 131 (5th Cir. 1933) (statute of limitations, based on absence from District, "is a matter of defense" and does not render indictment subject to dismissal; such a claim "raises an

issue and offers the prosecution an opportunity to meet it"); *United States v. Titterington*, 374 F.3d 453, 457 (6th Cir. 2004) ("the statute of limitations for [the offenses charged, including mail fraud] does not impose a pleading requirement on the Government, but merely creates an affirmative defense for the accused"); *Levine*, 249 F. Supp. 3d at 737–38 (Section 6531(8) tolling for tax offenses need not be alleged in Indictment); *Yip*, 248 F. Supp. 2d at 974 (same).

The Supreme Court's opinion in *Cook* established over 145 years ago that a court may not dismiss an indictment just because it appears on its face that it was not found within the limitations period, as doing so would deprive the prosecutor of the right to "give evidence" that an exception to the statute of limitations applies. 84 U.S. at 179-80. *Cook* "remains good law," *United States v. Titterington*, 374 F.3d at 457, and its animating principle—that an indictment need not allege a statute of limitations exception—has been applied in tax cases with respect to the out-of-country exclusion contained in Section 6531(8). *See United States v. Levine*, 249 F. Supp. at 737–38; *United States v. Yip*, 248 F. Supp. at 974. Accordingly, Gyetvay's claim that a statute of limitations exception must be alleged in the Indictment—which he tellingly fails to support with any on-point precedent—is without foundation.

## II.     THE CHARGES AGAINST GYETVAY ARE NOT MULTIPLICITOUS

### A.     Charges Are Not Multiplicitous If They Require Proof of Different Elements.

"An indictment is multiplicitous if it charges a single offense in more than one count." *United States v. Davis,* 854 F.3d 1276, 1286 (11th Cir. 2017) (*quoting United*

*States v. Woods*, 684 F.3d 1045, 1060 (11th Cir. 2012)).  The multiplicity doctrine is predicated on the Double Jeopardy Clause of the Fifth Amendment, which, among other things, assures that the Court does not "exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977).  When a defendant is convicted in a single proceeding of two offenses that are constitutionally the same, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Garrett v. United States*, 471 U.S. 773, 793 (1985) (*quoting Missouri v. Hunter*, 459 U.S. 359, 366 (1983)).

When the same conduct violates more than one statute, the first step in the double jeopardy analysis is to determine if the legislature intended each violation to be a separate offense.  *Davis,* 854 F.3d at 1286.  That determination is made by employing the test the Supreme Court established in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  There, the Court made clear that when the same act violates more than one distinct statute, punishment for more than one of the violations may not be imposed unless "each provision requires proof of an additional fact which the other does not." The analysis, therefore, "focuses on the statutory elements of the offense.  If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Albernaz v. United States*, 450 U.S. 333, 338 (1981); *Davis,* 854 F.3d at 1286; *United States v. Hassoun*, 476 F.3d 1181, 1185-86 (11th Cir. 2007) ("if an offense requires proof of an element that the other offense does not, we need look no further in determining that

10

the prosecution of both offenses does not offend the Fifth Amendment.").

In other words, "[t]he Blockburger test is applied by analysis of the elements of the offense charged, not by focusing on the evidence adduced at trial.  Similarly, a substantial overlap in the proof offered to establish the crimes is not a double jeopardy bar." *United States v. Boldin,* 772 F.2d 719, 726 (11th Cir. 1985) (internal citations omitted). This strict focus on the statutory elements, rather than the underlying facts, reflects the well-settled rule that an identical set of facts, or a single fact, may properly lead to conviction and punishment under multiple statutes. *See, e.g., United States v. Woodward*, 469 U.S. 105,107 (1985) (finding that false statement and currency reporting violation under Title 31 were not multiplicitous and noting that a single factual episode can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause); *Albernaz*, 450 U.S. at 344 n.3 (same).

**B.    The Three Counts in Question Each Require Proof of Different Elements.**

Gyetvay argues that the tax evasion, false statement, and one of the wire fraud counts are multiplicitous because they each allege his false Streamlined submission as a basis for the charges. Gyetvay is wrong. To be sure, the falsity of Gyetvay's Streamlined application is a component of each of those counts. But each count charges different overall conduct with distinct elements necessary for a conviction.

In advancing his multiplicity challenge, Gyetvay fails even to mention, let alone apply, the governing *Blockburger* analysis. This failure is unsurprising, as that analysis makes plain that each of the purportedly multiplicitous counts properly charges a

separate offense, and the charging of those offenses does not violate the Fifth Amendment.   Here, an analysis of the elements of the purportedly multiplicitous charges—Count Four (charging tax evasion, in violation of 26 U.S.C. § 7201), Count Ten (charging the making of a false statement, in violation of 18 U.S.C. § 1001), and Count Fourteen (charging wire fraud, in violation of 18 U.S.C. § 1343)—demonstrates that those discrete charges are not the same.

It is undisputed that, in order to establish Gyetvay's guilt on the tax evasion count, the Government must establish three elements: (1) a tax deficiency; (2) the commission by Gyetvay of an affirmative act of evasion; and (3) willfulness. *Sansone v. United States,* 380 U.S. 343 (1965); *United States v. Williams*, 875 F.2d 846, 849 (11th Cir. 1989).   On the other hand, in order to establish Gyetvay's guilt on the false statement charge, the Government must prove five different elements: (1) the Defendant made or used a document, (2) the document was false; (3) the falsity concerned a material matter; (4) the Defendant acted willfully, knowing that the document was false, and (5) the false document was made or used for a matter within the jurisdiction of a department or agency of the United States.   *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996); Eleventh Cir. Pattern Jury Instructions, Criminal Cases, Instruction O36 (2016).

And the wire fraud elements are different still, requiring the Government to establish: (1) the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises; (2) the false pretenses, representations, or promises were about a material fact; (3) the

Defendant acted with the intent to defraud; and (4) the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud. *United States v. Svete*, 556 F.3d 1157, (11th Cir. 2009); Eleventh Cir. Pattern Jury Instructions, Criminal Cases, Instruction O51 (2016).

Accordingly, it is plain that Counts Four, Ten, and Fourteen charge three separate crimes, in violation of three discrete statutes, each of which requires proof of completely different elements. "In light of the distinct elements of each count, the *Blockburger* test is satisfied and none of the contested counts is multiplicitous of the others." *Hassoun*, 476 F.3d at 1188.

In sum, Gyetvay's multiplicity argument is meritless.

## CONCLUSION

The Defendant's Motion should be denied.

DAVID A. HUBBERT
Acting Assistant Attorney General

STUART M. GOLDBERG
Acting Deputy Assistant Attorney  General
Department of Justice—Tax Division

By:        *Stanley J. Okula, Jr.*

Stanley J. Okula, Jr.
Senior Litigation Counsel
202-514-2839/stan.j.okula@usdoj.gov
David Zisserson
Kevin Schneider
Trial Attorneys

13

**Certificate of Service**

I certify that on October 21, 2021, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

*Stanley J. Okula, Jr.*

Senior Litigation Counsel
U.S. Department of Justice, Tax Division