UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 2:21-cr-83-TPB-NPM

MARK A. GYETVAY,

   Defendant.
_____/

**RESPONSE IN OPPOSITION TO UNITED STATES' MOTION
TO EXCLUDE TIME PURSUANT TO 18 U.S.C. § 3161(h)(8)**

On September 22, 2021, a grand jury returned a 15-count indictment charging Mr. Gyetvay (the "Indictment") with allegations all of which relate to the filing or non-filing of United States income tax returns and reports of foreign bank accounts ("FBARs"). On September 23, 2021, Mr. Gyetvay was arrested after dropping his two daughters off at their middle school. Later that day, the United States Department of Justice Tax Division (hereinafter, the "government") appeared before the Honorable Douglas N. Frazier for Mr. Gyetvay's initial appearance, arraignment, and bond hearing. At that hearing, the government attorney touted the strength of the case in support for what he admitted were "extraordinary" bail terms. *See* **Exhibit 1**, Tr. of Sept. 23, 2021 Hearing at p.14:7-10. Counsel for the government repeatedly referred to the government's "powerfully strong" case and represented that it is in possession

1

of "numerous reams of documentary evidence." *See id.* at p.12:3-5 and 18-20, p.13:13-14. The government recently produced to Mr. Gyetvay's counsel approximately 211,000 documents. Only six days after touting the strength of the government's case and the evidence supporting the Indictment, the government filed a motion to delay Mr. Gyetvay's trial under 18 U.S.C. § 3161(h)(8), the Speedy Trial Act ("STA"), by six months to a year because the government needs more time to gather foreign evidence to support its case. *See* Mot. to Exclude Time Pursuant to 18 U.S.C. § 3161(h)(8), ECF Doc. 26 (the "STA Exclusion Motion").

This is the ***third time*** that the government has applied for delays relating to its foreign evidence requests. *See* Exhibits A and B attached to STA Exclusion Motion (ECF Docs. 26-1 and 26-2). If the government has a "powerfully strong" case against Mr. Gyetvay with "numerous reams of documentary evidence," Mr. Gyetvay should be afforded his right to a speedy trial and the government's request for exclusion of time should be denied.

Mr. Gyetvay has suffered and continues to suffer harm arising from the Indictment and "extraordinary" release conditions currently in place (which Mr. Gyetvay, by separate motion, will request be modified). Mr. Gyetvay's right to a speedy trial under the Sixth Amendment and the Speedy Trial Act should not be abrogated by the government's gamesmanship in this case.

## I.   BACKGROUND

The government has been investigating Mr. Gyetvay since at least 2018.[1] In 2018 and 2019, Mr. Gyetvay's accountants produced workpapers, bank records, account opening documents, and other materials to the government totaling over 18,000 pages. Included in those productions were records from three Swiss banks: Coutts, Hyposwiss, and Falcon. Those productions specifically included account statements and account valuations for the Coutts, Hyposwiss, and Falcon accounts from 2005 through October 2015 when substantially all of Mr. Gyetvay's assets were transferred to J.P. Morgan Chase Bank in the United States. Coutts, Hyposwiss, and Falcon all entered the Department of Justice's ("DOJ") Swiss Bank Program[2] and are required to cooperate with any DOJ investigation, including, authenticating records. *See, e.g.*, **Exhibit 2**, Coutts/DOJ Non-Prosecution Agreement dated Dec. 23, 2015. In addition, Mr. Gyetvay's ex-wife—Nadezda Gavrilova—received immunity from the government and thereafter produced account records and other bank

---

[1] Mr. Gyetvay has been represented by counsel since 2018.

[2] The "Swiss Bank Program" was a program announced in 2013 by the Department of Justice which allowed Swiss banks that met certain criteria to resolve potential criminal liabilities in the United States. Swiss banks that met all of the government's criteria were eligible for a non-prosecution agreement. *See generally*, "Swiss Bank Program" available at: https://www.justice.gov/tax/swiss-bank-program (last accessed Oct. 21, 2021).

documents that she received from Coutts, Hyposwiss, and Falcon totaling approximately 1,300 pages.

The government concedes that the only two outstanding requests for foreign evidence are: (1) a December 3, 2019 request to Switzerland relating to records held by Coutts relating to two entities: Opotiki Marketing Ltd. ("Opotiki") and Felicis Commercial Corp. Ltd. (Felicis) (the "Opotiki and Felicis Foreign Evidence Request"); and (2) a January 21, 2021 Mutual Legal Assistance Treaty request to the United Kingdom (the "UK MLAT Request"). Pursuant to the UK MLAT Request transmittal letter, the government requested information relating to London Stock Exchange Group, the UK Financial Conduct Authority, Morgan Stanley & Co. International plc, Illuminum Incorporated Ltd., BDO LLP, and two redacted individuals or entities. *See* **Exhibit 3**, Jan. 20, 2021, Letter to HM Revenue and Customs enclosing the UK MLAT Request. The government has refused to produce the underlying treaty request and should be required to produce an unredacted copy of the transmittal letter.

The government has not alleged that Mr. Gyetvay had foreign bank accounts in the United Kingdom or that any of the conduct relating to the offenses had any nexus to or relationship with the United Kingdom. In fact, the words "United Kingdom" do not appear anywhere in the Indictment. The government's reliance on a foreign evidence request to the United Kingdom

4

that is unrelated to any of the counts brought in the Tax Division's Indictment and is therefore clearly an attempt to use 18 U.S.C. § 3161(h)(8) to gain a tactical advantage. *See United States v. Meador*, 138 F.3d 986, 994 (5th Cir. 1998) (affirming dismissal of indictment on other grounds but holding that a similar tolling provision, 18 U.S.C. § 3292, "should not be an affirmative benefit to prosecutors … [i]t is not a statutory grant of authority to extend the limitations period by three years at the prosecutors' option.").

## II. ARGUMENT

### A. The Government Touted the Strength of Its Case Therefore No Additional Foreign Evidence is Needed

#### 1. *Counts One Through Three of the Indictment are Unrelated to the Government's Pending Foreign Evidence Requests*

For 2006 through 2008, the government alleges that Mr. Gyetvay aided or assisted in the preparation of false tax returns in violation of 26 U.S.C. § 7206(2). Specifically, the government alleges that the false material matters on those returns were: (1) the income reported on line 22; and (2) the location of foreign accounts – Russia on schedule B, line 7b and the jurat. The 2006 through 2008 tax returns were prepared by Mr. Gyetvay's accountants and the government has conceded that it has "numerous reams of documentary evidence" from Mr. Gyetvay's accountants. *See* **Exhibit 1** Tr. of Sept. 23, 2021 Hearing at p. 12:18-25. In addition, the government obtained approximately 179,000 documents for the period 2005 to 2019 from Mr. Gyetvay's email

services provider (the "email search warrant"). The evidence for the alleged 2007 unreported income from a call option was obtained by the government pursuant to the email search warrant. Furthermore, the government has the Coutts account statements for 2006 through 2008 relating to Opotiki and Felicis. From an initial review of discovery provided by the government, these account statements are already in the government's possession.

The Opotiki and Felicis Foreign Evidence Request was made for "Tax Year: 2009 – 2018" and thus does not include the 2006 through 2008 tax years. *See* **Exhibit 4**, Dec. 3, 2019, Letter to Swiss Federal Tax Administration enclosing the Opotiki and Felicis Foreign Evidence Request.[3] Furthermore, the government has access to Mr. Gyetvay's email from 2005 through 2019 which it clearly used in preparing the Indictment. Other than the "Total Income" on lines 22 of those returns, the government asserts that the only other false and material matter on those returns was the location of foreign accounts in Russia—which it concedes has already taken "final action" with respect to the January 8, 2020 request cited in the STA Exclusion Motion. Finally, nothing in these counts (or anywhere else in the Indictment)

---

[3] The government has refused to produce the underlying Opotiki and Felicis treaty request that accompanied the December, 3 2019 letter to the Swiss Federal Tax Administration.

implicates any conduct in, or foreign evidence attributable to, the United Kingdom.

      *2. Count Four of the Indictment is Unrelated to the Government's Pending Foreign Evidence Requests*

For 2009, the government alleges in Count Four of the Indictment that Mr. Gyetvay attempted to evade or defeat tax in violation of 26 U.S.C. § 7201. First, the government ignores the fact that Mr. Gyetvay filed his 2009 federal income tax return on April 3, 2017, and paid all of the tax, interest, and penalties due and owing with respect to that return. The government does not allege that any portion of the 2009 federal income tax return filed on April 3, 2017, was incorrect or that Mr. Gyetvay owes any tax due and owing with respect to 2009. Paragraph 42 of the Indictment also alleges "affirmative acts of evasion." To the extent that those alleged acts relate to the Coutts, Hyposwiss, and Falcon accounts, the government is already in possession of the relevant records. The government does not have an outstanding foreign evidence request relating to Hyposwiss or Falcon. Moreover, as discussed above, Mr. Gyetvay, accountants, and his ex-wife have produced records relating to the Coutts accounts that are the subject of the foreign evidence request. Finally, nothing alleged in Count Four implicates any conduct in, or foreign evidence attributable, to the United Kingdom.

       3.    *Counts Five Through Nine of the Indictment are Unrelated to the Tax Division's Pending Foreign Evidence Requests*

For 2010 through 2014, the government alleges in Counts Five through Nine that Mr. Gyetvay failed to file tax returns in violation of 26 U.S.C. § 7203. Mr. Gyetvay filed his 2010 federal income tax return on April 3, 2017; his 2011-2013 tax returns on August 15, 2015 in accordance with the IRS's Voluntary Disclosure Program;[4] and his 2014 tax return on March 29, 2017. When those returns were filed Mr. Gyetvay paid all tax, interest, and penalties due and owing to the United States. In addition, the government has not alleged that any of the returns for the 2010 through 2014 tax years are false or incorrect. The 2010 through 2014 tax returns were prepared by Mr. Gyetvay's accountants. The government subpoenaed those accountants and received records relating to the preparation and filing of Mr. Gyetvay's 2010 through 2014 tax returns. As Mr. Gyetvay has filed returns showing his income for each of the years and his correspondence with his tax preparers has previously been provided to the government (and was not the subject of the foreign evidence requests underlying the SOL Tolling Orders), there is no conceivable connection between the required elements of 26 U.S.C. § 7203 and the STA Exclusion Motion. Finally, nothing alleged in Counts Five through Nine

---

[4] For more information on the IRS's Voluntary Disclosure Program, *see* Motion for Modification of Release Conditions, ECF Doc. 41 at pp. 3-7.

implicates any conduct in, or foreign evidence attributable, to the United Kingdom.

        4.    *Counts Eleven and Twelve of the Indictment are Unrelated to the Government's Pending Foreign Evidence Requests*

For 2014 and 2015, the government also asserts in Counts Eleven and Twelve that Mr. Gyetvay failed to file FBARs with respect to the Opotiki account held at Falcon. Mr. Gyetvay timely filed his FBAR relating to 2014 on June 25, 2015.[5] That 2014 FBAR was amended on or about March 28, 2017 at which time it reported information relating to the Opotiki account held at Falcon. Mr. Gyetvay timely filed his FBAR relating to 2015 on June 15, 2016.[6] That 2015 FBAR was amended on or about March 28, 2017 at which time it reported information relating to the Opotiki account held at Falcon. As Mr. Gyetvay timely filed FBARs for 2014 and 2015 (which were amended in 2017 before the Tax Division began its investigation) and bank records relating to the Opotiki account at Falcon are already in the government's possession (and were not the subject of the foreign evidence requests underlying the SOL Tolling Orders), there is no conceivable connection between the required elements of 31 U.S.C. § 5322 and the STA Exclusion Motion. Finally, nothing

---

[5] The government admits that Mr. Gyetvay made an FBAR submission to the Department of Treasury on or about June 25, 2015. *See* Indictment at ¶31, ¶52.

[6] The government admits that Mr. Gyetvay made an FBAR submission to the Department of Treasury on or about June 15, 2016. *See* Indictment at ¶32, ¶52.

alleged in the Indictment implicates any conduct in, or foreign evidence attributable, to the United Kingdom. Accordingly, given the foregoing, it is clear that the government's attempt to abrogate Mr. Gyetvay's constitutional and statutory rights to a speedy trial is in no way connected to the outstanding foreign evidence requests.

### III.  CONCLUSION

The government's representations to the Magistrate Court during the bond hearings in this case indicated that it already has all the evidence it needs for Mr. Gyetvay's trial. Furthermore, for the reasons set out above, there is no connection between the pending foreign evidence requests and the Indictment filed in this case. Accordingly, the Court should deny the government's STA Exclusion Motion and proceed with a speedy trial.

Respectfully submitted,


**/s/ Kevin Downing**
Kevin Downing
*(*Admitted *pro hac vice)*
Law Offices of Kevin Downing
601 New Jersey Avenue NW
Suite 620
Washington, D.C. 20001
Tel: 202-754-1982
Email: kevindowning@kdowninglaw.com
*Attorney for Defendant Mark A. Gyetvay*



**/s/ Matthew J. Mueller**
Matthew J. Mueller, FBN: 0047366
FOGARTY MUELLER HARRIS, PLLC
100 E. Madison Street
Suite 202
Tampa, Florida 33602
Tel:   813-682-1730
Fax:   813-682-1731
Email: matt@fmhlegal.com
*Attorney for Defendant Mark A. Gyetvay*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2021, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, thereby serving this document on all parties of record in this case.

**/s/ Matthew J. Mueller**
Matthew J. Mueller, FBN: 0047366
*Attorney for Defendant Mark A. Gyetvay*
