UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**UNITED STATES OF AMERICA**

v.                                                    Case No. 2:21-cr-83-TPB-NPM

**MARK A. GYETVAY**

_____

**ORDER**

The government moves to exclude time under the Speedy Trial Act (Doc. 26) and for issuance of a Rule 17(c) subpoena (Doc. 71). On May 16, 2022, the court heard argument on the motions. (Doc. 111).[1] For the reasons discussed below, the court grants both motions.

**I.      Motion to Exclude Time Under the Speedy Trial Act**

In this tax-related prosecution, the government made official requests for evidence to Switzerland between December 2019 and January 2020 and to the United Kingdom in April 2021. (Doc. 26 at 3-4). The government sought Coutts Bank account records from Switzerland and London Stock Exchange Group records from the United Kingdom. (Doc. 52 at 4-5). Gyetvay was subsequently indicted on September 22, 2021 (Doc. 3) and initially appeared on September 23, 2021 (Doc. 11). Due to the foreign-evidence requests, the government moves to exclude time

_____

[1] The parties subsequently obtained leave to file a post-argument memorandum concerning the Rule 17(c) motion. (Doc. 115). But on June 10, 2022, the parties advised the court that no further filings would be made in connection with the Rule 17(c) motion.

under the Speedy Trial Act. (Doc. 26). The official requests remain outstanding. (Doc. 127 at 7).

Under the Speedy Trial Act (STA), a defendant's trial "shall commence within seventy days" from the latter of the filing of the indictment or the defendant's first appearance. 18 U.S.C. § 3161(c)(1). The STA also provides, however, that certain periods of delay "shall be excluded . . . in computing the time within which the trial of any such offense must commence." § 3161(h). Time spent by the United States obtaining foreign evidence, up to one year, falls under this exclusion. *See* § 3161(h)(8). To exclude such time, the court must make two findings by a preponderance of the evidence: (1) that an official request for foreign evidence has been made, and (2) that it reasonably appears such evidence is in the foreign country. *Id*. If the government establishes the two elements, "the court is ***compelled*** under a plain reading of 18 U.S.C. § 3161(h)(8) to exclude that time …." *United States v. Fahnbulleh*, 742 F. Supp. 2d 137, 146 (D.D.C. 2010) (emphasis in original), *aff'd*, 752 F.3d 470 (D.C. Cir. 2014).

Gyetvay does not contest that the government has made official requests for foreign evidence. Rather, Gyetvay argues the government already has the evidence needed for trial and that the official requests are unrelated to the indictment. (Doc. 42 at 5-11). But the STA contains no requirement that the evidence be necessary, or even important. The statute requires only "evidence of any such offense."

2

§ 3161(h)(8). Indeed, in a related context, the Eleventh Circuit has found "[i]t is neither here nor there that . . . none of the evidence requested or obtained by the Government was needed at trial." *United States v. Broughton*, 689 F.3d 1260, 1275 (11th Cir. 2012) (considering suspension of statute of limitations under § 3292). And during the grand jury investigation of Gyetvay, the court already found by a preponderance of the evidence that it reasonably appears evidence of the target offenses is located in Switzerland and the United Kingdom. (Doc. 26-1 at 3; Doc. 26-2 at 3). Having satisfied the two elements of § 3161(h)(8), the government is entitled to an exclusion.

But the court has already excluded the period from October 12, 2021, through the end of the October 2022 trial term under § 3161(h)(7). (Docs. 38, 76, 89). The government argues its motion is not moot because the one-year exclusion period would run "from when the Court enters an order excluding time." (Doc. 111 at 5). Courts have held, however, that time excluded under § 3161(h)(8) begins to run at the latter of the first appearance or official request. *See, e.g.*, *United States v. Tao*, No. 19-20052-JAR, 2022 WL 841343, *4 n.25 (D. Kan. Mar. 21, 2022) ("Defendant incorrectly argues that the date of this Order is the first day on which the Court can begin excluding time under § 3161(h)(8) . . . but nothing in the Speedy Trial Act requires the excludable period to begin on the date the court enters that order."). To

3

allow the excluded period to run from the date of this order could result in a delay

of nearly two years from the date of the initial appearance—that is not speedy.

Because the official requests precede Gyetvay's first appearance, the time

excluded for the requests runs from September 23, 2021, the date of the first

appearance. The court grants an exclusion for the maximum one-year period. *See*

§ 3161(h)(8). Accordingly, all seventy days of the STA period remain for the

government. *See* § 3161(c)(1). Absent any further STA order by the court, the

seventy-day period will begin to run following the October 2022 trial term.

## II.     Motion for Issuance of Rule 17(c) Subpoena

The government also seeks issuance of a Rule 17(c) subpoena (Doc. 71). The

subpoena, directed to Gyetvay, is another avenue the government pursues to obtain

the Coutts Bank account records.

The government's subpoena demands:

> records and documents pertaining to the financial account maintained at
> Coutts & Co. Ltd (also known as RBS Coutts AG or Coutts Bank von Ernst
> Ltd.) in name of Felicis Commercial Corp.: account opening documents, all
> account statements, transaction instructions and documents, signature cards,
> KYC documents, statements of beneficial ownership, Forms A, account
> closing documents and instructions, account correspondence, and internal
> account activity records.

(Doc. 71-1 at 2). During the hearing on the motions, the government agreed to seek

only "customary account records," abandoning the request for internal activity

records and narrowing the request for account correspondence to those between

Gyetvay and Coutts. (Doc. 111 at 11).

Rule 17(c) provides that a subpoena may order the production of "any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c). But Rule 17(c) subpoenas are not a discovery tool—they provide a mechanism to obtain only specific evidence for trial. To require production by subpoena, the movant must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974). Generally, the government "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id*. at 700.

The documents sought here are patently relevant. And Gyetvay does not challenge whether the documents are evidentiary and relevant in his opposition. (Doc. 82). The government has also shown the documents "are not otherwise procurable reasonably in advance of trial by exercise of due diligence." *Nixon*, 418 U.S. at 699. The government exercised due diligence and submitted an official treaty request to Switzerland to obtain the documents, as discussed above, that is still pending. And Gyetvay's argument that the government can subpoena Coutts, and therefore the documents are "otherwise procurable," is unconvincing. Aside from Fifth Amendment concerns, discussed below, the court finds no reason to prefer one subpoena over another. Further, the government has also shown that it cannot

properly prepare for trial without the documents, and failure to obtain the documents has already caused delay. (Doc. 52 at 4-5). Lastly, the government has shown the subpoena is made in good faith and is not a general "fishing expedition." *Nixon*, 418 U.S. at 700. Indeed, as discussed below, the government seeks specific documents that it knows exist. That the government earlier tried to obtain these documents during the grand jury investigation does not forever label them as mere discovery and not relevant, evidentiary documents to be used at trial. The government has satisfied Rule 17(c).[2]

In addition to Rule 17, the subpoena must also withstand constitutional scrutiny. The Fifth Amendment provides that "[n]o person shall be compelled in any criminal case to be a witness against himself …." U.S. Const. amend. V. In *Fisher*, the United States Supreme Court considered a Fifth Amendment challenge to a subpoena. *Fisher v. United States*, 425 U.S. 391 (1976). There, the Internal Revenue Service sought voluntarily prepared documents taxpayers had given to their attorneys. *Id*. at 394. The attorneys refused to comply, citing the Fifth Amendment. *Id*. at 395. The Court held that when the preparation of documents is "wholly voluntary," the content of the documents is not compelled testimonial evidence

---

[2] Notwithstanding Gyetvay's suggestions to the contrary, the government's motion is not, in effect, a motion to reconsider a ruling made during the grand jury investigation that denied a motion to compel. The current motion is made in a separate action and seeks a different subpoena for a narrower set of documents.

barred by the Fifth Amendment. *Id*. at 409-10. But the act of producing the evidence may have a testimonial character of its own, as compliance with a subpoena "tacitly concedes" the existence, possession or control, and authenticity of the subpoenaed documents. *Id*. at 410-13. Applying these principles, the Court found the documents were voluntarily prepared and that their production did not involve testimonial self-incrimination because their existence, possession, and authenticity was a "foregone conclusion." *Id*. at 411. In other words, the government already knew the documents existed, knew the taxpayers possessed the documents, and could prove their authenticity through third-party testimony. *Id*. at 411-13.

Gyetvay does not argue the documents here were involuntarily prepared, and therefore the documents' *contents* do not trigger Fifth Amendment protection. *See Fisher*, 425 U.S. at 409-10. Gyetvay argues *the production* of the documents would be testimonial self-incrimination. Accordingly, the subpoena cannot issue unless the foregone conclusion doctrine applies.

But the foregone conclusion doctrine does apply. The government knows the documents exist, knows Gyetvay has possession or control, and can prove the documents' authenticity through third-party testimony. The government knows the documents exist because Gyetvay admitted he established Felicis Commercial Corp. and that Felicis opened accounts at Coutts. (Doc. 71-7 at 10). And Coutts has retained all records relating to "U.S. Related Accounts." (Doc. 71-4 at 2). In turn,

"U.S. Related Accounts" are those that exceeded $50,000 in value at any month end between August 2008 and 2014 and that a United States person or entity had some authority over. (*Id*.). Coutts identified two such accounts with records including account opening documents, Swiss Form A, account statements, closing instructions and documents, internal account activity records, account correspondence, Know Your Customer documents, and bank statements. (*Id*. at 2-3). Critically, the government seeks only "customary account records." *See United States v. Fridman*, 974 F.3d 163, 177 (2d Cir. 2020), cert. denied, 141 S. Ct. 2760 (2021).[3] In *Fridman*, the court faced a similar IRS summons. There too, the government sought opening and closing documents, Know Your Customer Account information, signature cards, certificates of beneficial ownership, bank statements, and transaction records. *Id*. at 172-73. Because these documents are "quintessential customary account documents" pertaining to financial accounts the government knew existed, the court held their existence is a foregone conclusion. *Id*. at 177. In light of Gyetvay's statements, the Coutts affidavit, and *Fridman*, the government has proven that the existence of the documents is a foregone conclusion.

As to possession and control, "the test for the production of documents is control, not location." *Id*. at 178. Again, Gyetvay admitted he established Felicis and

---

[3] Gyetvay argues *Fridman* is distinguishable because the subpoena at issue here seeks "account correspondence" and "internal account activity records." (Doc. 82 at 11). But, as discussed above, the government has narrowed and abandoned those requests, respectively.

that Felicis opened accounts at Coutts. (Doc. 71-7 at 10). Emails obtained from a search warrant show Gyetvay directing a banker at Coutts to wire transfer funds from an "F" account and pay bills on behalf of Felicis via wire transfer within Coutts. (Doc. 71-6 at 2-4, 8-9). Gyetvay also stated he owned a Coutts account in his FBAR filing[4] for 2008. (Doc. 90-3 at 4). Coutts has stated the same United States person is the sole beneficial owner of the assets in the two accounts, and that the account records are available upon request by the beneficial owner. (Doc. 71-4 at 3-4). This evidence goes beyond an "inference of control." (Doc. 71 at 5). Gyetvay argues the government "manufactured" control here through a non-prosecution agreement with Coutts and a tax treaty request.[5] But the government seeks only customary account records—records available to Gyetvay regardless of any non-prosecution agreement or treaty request. Indeed, in *Fridman*, the court found the government sufficiently proved control of similar documents, even without assurances directly from the bank. *See Fridman*, 974 F.3d at 178. The government has proven Gyetvay's control over the documents.

---

[4] A person must file an FBAR if he has a "financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country." 31 C.F.R. § 1010.350.

[5] Gyetvay repeatedly cites the court's previous order which states "Gyetvay's production of those records to the government would falsely imply that he controlled them." (Doc 71-3 at 3). Gyetvay cites to this statement as if it is a finding of the court. But Gyetvay's out-of-context citations fail to mention the court was merely reciting Gyetvay's arguments, not adopting them.

As to authenticity, Coutts has stated it is able to authenticate account records in the event some or all of the documents are produced. (Doc. 71-4 at 4). The government can also rely on the testimony of other third parties or comparisons with bank records it already possesses. *See Fridman*, 974 F.3d at 179-80. The government has already obtained, via subpoenas to Gyetvay's accountants, some Coutts Felicis account records that may serve to authenticate the documents at issue here. (Doc. 71 at 8). The government has also obtained similar documents from Gyetvay's ex-wife. (Doc. 71 at 8). With Coutt's assurances and other bank records the government already possesses, the government has proven it can authenticate the documents without relying on the tacit concession of Gyetvay's production.

In short, the Fifth Amendment does not bar issuance of the subpoena. The government has made a sufficient showing of existence, possession or control, and authenticity and the foregone conclusion doctrine applies.[6]

## III.   Conclusion

Accordingly, the government's motion to exclude time under the Speedy Trial Act (Doc. 26) is **GRANTED**. The seventy-day period under the Speedy Trial Act

---

[6] Gyetvay also argues that the government is required to obtain the documents either through the treaty process or by directing the subpoena to Coutts. (Doc. 82 at 14-16). But "[t]here is no requirement that the government only subpoena foreign bank records from an individual as a last resort when other efforts to obtain such documents from the foreign bank have been exhausted. Such a rule has no basis in the law and could significantly delay criminal investigations." *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 908 F. Supp. 2d 348, 357 (E.D.N.Y. 2012), aff'd, 741 F.3d 339 (2d Cir. 2013).

will begin to run following the October 2022 trial term, subject to any other exclusions that may arise. The motion for issuance of a Rule 17(c) subpoena (Doc. 71), as modified by the government's concessions during the May 16, 2022 hearing, is also **GRANTED**. The government may serve Gyetvay with a Rule 17 subpoena that conforms with this order and Local Rule 3.04.

**ORDERED** on September 7, 2022.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE