UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 2:21-cr-83-TPB-NPM

MARK A. GYETVAY,

    Defendant.
_____/

**DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL
(DOC. 168) FILED DECEMBER 19, 2022**

Pursuant to Fed. R. Crim. P. 59(a), Defendant Mark Gyetvay respectfully submits the following objections to the Magistrate Judge's December 19, 2022, Order denying the defendant's motions to compel (Doc. 168) (the "Order"):

- The Order erroneously and contrary to law concluded that the defense was not entitled to discovery of communications between Coutts and the DOJ Tax Division. (Doc. 168 at 8-9).

- The Order erroneously and contrary to law concluded that the defense was not entitled to discovery of communications relating to any IRS referral to the DOJ Tax Division to investigate or prosecute the defendant. (Doc. 168 at 9).

- The Order erroneously and contrary to law concluded that the defense was not entitled to discovery of communications showing that the IRS questioned whether to prosecute the defendant and communications showing that the IRS believed it was not defrauded by the defendant's amnesty filings. (Doc. 168 at 9-13).

## I. INTRODUCTION

The Order erroneously and contrary to law denied the defendant's

1

motions to compel the production of discovery that the defendant is entitled to under Fed R. Crim P. 16(a)(1)(e)(i) and *Brady v. Maryland*. (Doc. 117; Doc. 126; Doc. 153). Pursuant to Rule 16, the defense made specific requests for information and demonstrated the materiality of the information sought. *See United States v. Jordan*, 316 F.3d 1215, 1250-51 (11th Cir. 2003).

## II. LAW AND ARGUMENT

In reviewing the Order, this Court "must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." FED. R. CRIM. P. 59(a). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *See Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005) (citations and quotations omitted). A magistrate judge's order "is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Botta v. Barnhart*, 475 F.Supp.2d 174, 185 (E.D.N.Y. 2007) (*quoting Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

### a. The Magistrate Judge Erroneously Held that the Defendant was not Entitled to Discovery of Communications Between Coutts and the DOJ Tax Division

The Government has alleged that Mr. Gyetvay entered the IRS amnesty

2

program "only after he learned that he was going to be caught because the Swiss bank was turning over his information." (Doc. 117-3). That representation was false. Shortly after Mr. Gyetvay entered the IRS amnesty program in August 2015, his attorneys advised Coutts bank that Mr. Gyetvay had entered the IRS amnesty program and that Coutts could provide that information to the DOJ Tax Division. On December 18, 2015, Coutts' attorneys sent a senior DOJ Tax Division prosecutor an email and attachments that advised the DOJ Tax Division that: (1) the defendant had entered the IRS amnesty program; and (2) directly connected the defendant to specific account information that had been provided by Coutts in negotiating its own non-prosecution agreement. (Doc. 153-5). The government withheld that communication from the defense and did not produce it in discovery. The defendant only obtained that communication via a subpoena to the law firm representing Coutts.

The defendant's voluntary disclosure of specific information in December 2015 is discoverable under *Brady* and its progeny because those acts are inconsistent with intent to defraud the government. In addition, that information is material to the defense under Rule 16. There was no excuse for the government's failure to produce the December 18, 2015 communication. Moreover, the existence of *Brady* material that was not produced establishes that the Order denying the motion to compel was erroneous. The Magistrate

3

Judge did not evaluate whether the December 18, 2015, communication was *Brady* and ignored the fact that Mr. Gyetvay's voluntary provision of information in December 2015 (a document that the government did not produce in discovery) is material to the defense's theory that Mr. Gyetvay lacked the requisite intent to defraud the IRS. This runs counter to the Order's assertion that Mr. Gyetvay's motions sought to use discovery as a sword rather than as a shield.

Finally, the Order erroneously installs an insurmountably high bar to cross to establish materiality under Rule 16. That holding is erroneous as courts have routinely applied a low bar to determine whether evidence is material to preparing the defense. *See, e.g., United States v. Lloyd*, 992 F.2d 348 (D.C. Cir. 1993) ("…evidence is material…if it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.") (internal quotation marks omitted); *United States v. Hernandez-Meza*, 720 F.3d 760 (9th Cir. 2013) ("Information is material even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path.'"); *United States v. Royal*, 2022 WL 677577, *5 (S.D. Ga. 2022) (defendant met the "low bar" of materiality). Accordingly, the Magistrate Judge's Order denying the defendant's motion to compel discovery of communications between the DOJ Tax Division and Coutts was erroneous and contrary to law.

### b. The Magistrate Judge Erroneously Held that the Defendant was not Entitled to Discovery of Communications Relating to an IRS Referral to the DOJ Tax Division

The Magistrate Judge failed to address the requirements of 26 U.S.C. § 6103 which governs, among other things, when the IRS can provide tax returns and return information to the DOJ Tax Division. The defendant sought discovery into communications relating to an IRS referral to the DOJ Tax Division because the genesis of this case is material to his defense and implicates *Brady*, which has been extended by the Supreme Court to apply to impeachment materials. S*ee, e.g., United States v. Bagley*, 473 U.S. 667, 676 (1985) (failure to disclose *Giglio* materials is of the same constitutional import as failure to disclose *Brady* exculpatory materials).

The defendant entered an IRS amnesty program which specifically provided that the civil IRS—not the DOJ Tax Division—would evaluate the defendant's amnesty submission. Moreover, the explicit terms of the IRS amnesty program only allowed the IRS to make a decision with respect to a potential criminal referral relating to those amnesty filings. And the separation between the civil IRS function (which was tasked with evaluating the amnesty filings) and the criminal function (which was supposed to be excluded from the civil IRS amnesty program) is material to the defense. A violation of 26 U.S.C. § 6103 which prohibits information sharing between the

5

civil tax functions and the criminal tax functions could form the basis for a constitutional violation of the defendant's rights. *See United States v. Tweel*, 550 F.2d 297, 299 (5th Cir. 1977).

In this case, the DOJ Tax Division had information regarding the defendant's amnesty filings prior to the March 2018 referral by the IRS. The DOJ Tax Division sent a letter to the IRS in February 2017—over a year prior to the IRS referral—asking the IRS to join the DOJ Tax Division's investigation. Accordingly, the Magistrate Judge's holding that the government's production of the March 2018 referral vitiated the need to perform any further analysis regarding the defendant's arguments is erroneous. (Doc. 168 at 9 ("But the court need not decide the issue—the government has provided the referral, proving incorrect Gyetvay's accusations."). Given the undisputed timing of the DOJ Tax Division request and the IRS referral, the DOJ Tax Division must have had Mr. Gyetvay's tax return information in 2017 (over a year before the referral) that was sufficient to form the basis for the invite letter to the IRS. The defense has sought that information to determine whether and how it was obtained. If that information was obtained in violation of 26 U.S.C. § 6103, that would not only form the basis for a *Tweel* argument but would also be discoverable under *Brady* and/or *Giglio* as it could be used to impeach government witnesses. The Order fails to address binding precedent outlining that evidence calling into question the

good faith of the investigation also must be produced. Evidence is favorable if it is either exculpatory, impeachment, or "may be used to attack the 'thoroughness and even the good faith of the investigation.'" *See Consalvo v. Sec'y for the Dep't of Corr.*, 664 F.3d 842, 844-45 (11th Cir. 2011) (quoting *Kyles v. Whitley*, 514 U.S. 419 (1995)).

The Magistrate Judge erroneously ignored those facts and the legal standards governing disclosure by the IRS of return information to the DOJ Tax Division. (Doc. 168 at 9 ("As an initial matter, it is unclear whether a referral is in fact required by § 6103 under these circumstances. But the court need not decide the issue—the government has provided the referral, proving incorrect Gyetvay's accusations."). The issue of principal importance was not whether the IRS at some point referred the case to the DOJ Tax Division, but whether the DOJ Tax Division accessed 26 U.S.C. § 6103 materials improperly **prior** to the referral. Thus, it was clearly erroneous and contrary to law to conclude that this issue was settled by the government producing the March 2018 referral letter.

> **c. The Magistrate Judge Erroneously Held that the Defense was not Entitled to Discovery into IRS Communications Relating to Whether the IRS Determined that the Defendant's Amnesty Program Statements were false and Whether the IRS Determined that it had been Defrauded**

The Magistrate Judge erroneously concluded that certain IRS communications were not discoverable under Rule 16 or *Brady*. (Doc. 168 at 9).

7

As discussed above, the IRS was the decisionmaker that was responsible for evaluating the defendant's amnesty submissions. The IRS was the agency that was also tasked with establishing the requirements for the amnesty programs and issuing guidance with respect to compliance with those amnesty programs. Moreover, the IRS was the agency that was responsible for reviewing the defendant's "non-willfulness" statement. And IRS employees did just that. Clearly then, given the case law cited by the defense, communications regarding the IRS's determinations with respect to the Mr. Gyetvay's amnesty program filings and whether the IRS determined that it had been defrauded would be material to the defense and *Brady* to the extent that they show that Mr. Gyetvay lacked the requisite intent. As the Magistrate Judge correctly concluded, binding precedent establishes that "a defendant can argue he lacked intent to defraud by showing no loss in fact occurred." (Doc. 168 at 12).

The Magistrate Judge's erroneously determined that the defendant was seeking evidence about "[a]n IRS employee's opinion about whether a crime occurred".[1] That is not what the defense seeks. The defense is seeking communications that show that the IRS—the agency tasked with evaluating Mr. Gyetvay's amnesty filings—determined that the four sentence non-

---

[1] This proposition was introduced by the government in its briefing and then adopted in the Order. But the Defendant has never sought the mere opinions of random IRS employees. He seeks the position of the agency as expressed by IRS employees acting in their official capacity.

willfulness certification provided by the defendant met the requirements of the IRS amnesty program. Furthermore, pursuant to the express terms of the IRS amnesty program, the IRS was required to evaluate and make any determination regarding Mr. Gyetvay's qualification for the IRS amnesty program. And it was the IRS that was responsible for determining whether to initiate a criminal referral. Therefore, communications relating to the IRS's determinations with respect to Mr. Gyetvay's amnesty filings are relevant, material to the defense, and potentially *Brady*.

The Magistrate Judge misapplied *United States v. Nejad*, 487 F. Supp. 3d 206 (S.D.N.Y. 2020) and *United States v. Foshee*, 569 F.2d 401 (5th Cir. 1978) ("Foshee I"). The Magistrate Judge distinguished *Nejad* because "the decision to bring enforcement proceedings in *Nejad* mattered because counts in the indictment relied on potential OFAC enforcement." (Doc. 168 at 11). In this case, like *Nejad*, certain counts, including the two wire fraud counts, are dependent on whether the defendant schemed to defraud the IRS out of money or property. Therefore, communications reflecting the IRS's evaluation of the purported false statements are discoverable, as were the OFAC evaluations in *Nejad*. The Order distinguishes *Nejad* because it was not a "tax-related prosecution" (Doc. 168 at 11), but that holding neglects the fact that both the defendant in *Nejad* and Mr. Gyetvay were charged with Title 18 offenses that require proof of a scheme to defraud a victim out of money or property. Just as

9

the defendant in *Nejad* was entitled to OFAC's views, Mr. Gyetvay is entitled to full discovery into the IRS' views as an agency as to whether he defrauded the agency out of money or property. The defense seeks this discovery now to avoid the very situation that came to a head in *Nejad*, that is, a criminal defendant only being provided with obvious *Brady* material **after** trial.

The former Fifth Circuit held in *Foshee I* that "…a defendant can argue he lacked the intent to defraud by showing no loss in fact occurred," as the Order recognized. (Doc. 168 at 12). But *Foshee I* also made clear that the bank fraud defendants in that case could also argue that they did not act with intent to defraud because the banks themselves did not claim to be defrauded: "the Foshees had a right to urge that the banks did not lose any money . . . the Foshees offered testimony to the effect that no bank complained of a loss and that the drafts were all paid." 569 F.2d at 403. The Former Fifth Circuit issued a second opinion in *Foshee II*, clarifying the panel's holding. *United States v. Foshee*, 578 F.2d 629, 631 (5th Cir. 1978) ("*Foshee II*"). In *Foshee II*, the panel made clear that the payment of checks were admissible to show lack of intent to defraud despite government argument that the checks were paid only because defendant knew of investigation. Mr. Gyetvay raises the same arguments in defense of his case, namely, that he paid the taxes (with penalties and interest) owed for the years at issue with his IRS amnesty filings before he was aware of a criminal investigation. Consequently, properly applying

*Nejad*, *Foshee I*, and *Foshee II*, supports the defendant's argument that the Court should compel production of all IRS statements relating to whether the agency was defrauded by Gyetvay.

## III. CONCLUSION

The Magistrate Judge's Order improperly denied the defense's motions to compel discovery. This court should set that Order aside and issue an Order requiring the government to produce the requested material.

Respectfully submitted,

**/s/ Kevin Downing**
Kevin Downing
*(*Admitted *pro hac vice)*
Law Offices of Kevin Downing
601 New Jersey Avenue NW
Suite 620
Washington, D.C. 20001
Tel: 202-754-1982
Email: kevindowning@kdowninglaw.com
*Attorney for Defendant Mark A. Gyetvay*


**/s/ Matthew J. Mueller**
Matthew J. Mueller, FBN: 0047366
FOGARTY MUELLER HARRIS, PLLC
100 E. Madison Street
Suite 202
Tampa, Florida 33602
Tel:   813-682-1730
Fax:   813-682-1731
Email: matt@fmhlegal.com
*Attorney for Defendant Mark A. Gyetvay*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2023, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, thereby serving this document on all parties of record in this case.

                                           **/s/ Matthew J. Mueller**
                                           Matthew J. Mueller, FBN: 0047366
                                           *Attorney for Defendant Mark A. Gyetvay*