UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.  Case No. S2:21-cr-83-TPB-NPM

MARK A. GYETVAY

### UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO ORDER DENYING MOTIONS TO COMPEL

The United States respectfully submits this response to Defendant's Objections to the Magistrate Judge's Order Denying Defendant's Motions to Compel (Doc. 168) Filed December 19, 2022.[1]

Defendant Mark Gyetvay moved to compel the Government to produce several categories of discovery, and Magistrate Judge Mizell ordered that the Defendant was not entitled to any of it.[2] At the heart of the Defendant's motions are several speculative theories that, even if true, would not tend to exculpate the Defendant, nor provide the basis for a legitimate defense. As Judge Mizell concluded: "Gyetvay presents no non-speculative basis for compelling the requested discovery. His arguments misapply law and ignore facts."[3]

At a fundamental level, permeating Gyetvay's motions and his current objections is a misapplication of the law governing criminal discovery. Contrary to

---

[1] Doc. 176.
[2] December 19, 2022 Order, Doc. 168.
[3] *Id.* at 13.

his arguments, he is not entitled to discovery based on his own conjecture of how documents may hypothetically support various defense theories. First, as Judge Mizell's Order noted, Rule 16 requires disclosure of materials for the Defendant's response to the Government's case in chief – not to challenges to the Government's conduct of the case. *See United States v. Armstrong,* 517 U.S. 456, 462 (1996). Similarly, "the rule pronounced in *Brady* and its progeny is not a discovery tool." *United States v. Wasserman,* 2022 U.S. Dist. LEXIS 105233 at *5, Case No. 8:20-cr-207 (M.D. Fla. June 13, 2022) (internal citations omitted). In that regard, "the court is simply not required to ensure access to all government material in order that [the defendant] might be able to find something exculpatory for his case." *United States v. Davis*, 752 F.2d 963, 976 (5th Cir. 1985).

Therefore, just because Gyetvay hypothesizes that documents may contain exculpatory information, does not mean that the information exists, let alone that he is entitled to it. *See United States v. Quinn*, 123 F.3d 1415, 1422 (11th Cir. 1997) (holding that government was not required to produce personnel files based on defendant's unsupported contention that they may contain exculpatory information). Toward that end, the Eleventh Circuit has "declined to order discovery based upon mere speculation as to whether the material would contain exculpatory evidence because to do so would 'convert *Brady* into a discovery device and impose an undue burden upon the district court.'" *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1189 (11th Cir. 2006) (quoting *Quinn*, 123 F.3d at 1422). In other words, "defendants cannot use *Brady*

2

simply to search for *Brady* materials." *See United v. Weld*, 2009 U.S. Dist. LEXIS 32439 at *4, Case No. 08-cr-0083 (N.D. Cal. April 1, 2009).

In any event, Gyetvay's objections focus on three categories of documents: (1) communications between the Department of Justice and Coutts bank; (2) communications between the IRS and the DOJ; and (3) IRS communications regarding whether to prosecute the Defendant or reflecting that the IRS believed it was not defrauded by him. As discussed below, Judge Mizell correctly denied the Defendant's motion to compel production of such items.

I.  **Communications Between DOJ and Coutts Bank**

Gyetvay has been charged with a years-long tax evasion scheme that culminated when he filed a false disclosure with the IRS under an offshore compliance initiative known as the Streamlined Foreign Offshore Procedures ("SFOP").[4] In his motion to compel communications between the DOJ and Swiss bank Coutts, Gyetvay hypothesized that such documents would show that the DOJ used Coutts to "create a subterfuge" by soliciting him to make that disclosure, just so the government could use it against him.[5] The documents show no such thing and do not constitute *Brady* material to support the Defendant's attempt to blame the Government for his own false disclosure.

In that regard, the Supreme Court has made clear that when one participates in a voluntary disclosure program, he does so at his own risk. As such, a taxpayer who

---

[4] Second Superseding Indictment, Doc. 101 at 20-21, 30.
[5] Defendant's 1st Mot. to Compel, Doc. 117 at 5-6.

3

files tax returns in response to an IRS voluntary disclosure policy has no Fifth Amendment right to preclude use of the returns as evidence against him. *See Shotwell Manufacturing Co. v. United States*, 371 U.S. 341, 349 (1963). As the Court explained, the IRS policy left taxpayers "wholly free to disclose or not as they pleased," and in choosing to file their returns, they were not "victims of that policy," but rather "volunteers for its benefits." *Id.* at 348-49.

Now, objecting to Judge Mizell's Order, Gyetvay has shifted his rationale for why he is entitled to communications between Coutts and the DOJ. Gyetvay's objection focuses on a December 2015 email from Coutts to a DOJ attorney that links Gyetvay to a Swiss account he had already disclosed to the IRS in his August 2015 SFOP filing at issue in the Indictment. Previously, Gyetvay seized on that email to argue that it proved that the Government's application in 2020 to toll the limitations period under 18 U.S.C. § 3292, due to a pending treaty request to Switzerland, improperly concealed that the DOJ was aware of who Gyetvay was when it withdrew a previous Swiss treaty request in 2016.[6] Why that would matter is not clear. But, it was the focus of Gyetvay's argument why the email constitutes *Brady* material, as is apparent from Judge Mizell's order:

> In short, the documents do not prove what Gyetvay claims they prove—that the government really knew all along Gyetvay was behind the anonymized accounts—and, in any event, it is unclear why that even matters. The idea that the government's treaty efforts were pretextual is entirely speculative and inconsistent with other positions Gyetvay has taken in this case.[7]

---

[6] Mot. to Compel Disclosure of Rule 16 and *Brady* Material, Doc. 153 at 7.
[7] Doc. 168 at 6.

4

Gyetvay now argues something different: that the December 2015 email is *Brady* material because it is evidence of his willingness to disclose his Swiss accounts, which is inconsistent with a purported intent to defraud the Government.[8] That argument fails as well. The email from Coutts attached a letter the bank received from Gyetvay's Swiss counsel stating that Gyetvay submitted his SFOP filing to the IRS, attaching his SFOP cover letter to the IRS, and stating: "we authorize and release the Bank to transmit the present document (as well as any documents provided in connection herewith), or communicate the contents thereof, to the IRS and/or US Department of Justice in connection with the US Program for Swiss banks."[9]

In other words, that letter authorized the bank to provide the letter itself to the Government. The bank's email was simply the mechanism that transmitted it. Moreover, the existence of that letter was not news to Gyetvay. Indeed, the Government *did* produce in discovery the letter attached to the email. The email itself is not Gyetvay's communication, but the bank's. It does not tend to exculpate him, and says nothing about *all* of the communications between Coutts and the DOJ that he seeks. As a result, Judge Mizell was correct to deny Gyetvay's motion for such documents.

## II.  Communications Between DOJ and IRS

Gyetvay further objects to Judge Mizell's Order denying his motion to compel production of communications related to the IRS's referral of this matter to the DOJ.

---

[8] Doc. 176 at 4.
[9] Doc. 153-5.

Gyetvay argues that such documents are discoverable because they would reflect violations of the tax return confidentiality provisions of 26 U.S.C. § 6103. According to Gyetvay, because the DOJ had information about him before the IRS referred him for a grand jury investigation, the DOJ must have obtained some information in violation of Section 6103.[10]

As an initial matter, that premise is incorrect. An IRS referral to the DOJ of Gyetvay, specifically, was not necessary for the DOJ to obtain tax return information related to him. Rather, the IRS's referral of Coutts Bank allowed the DOJ to examine returns and return information transactionally related to the Coutts referral, which included information related to Gyetvay. *See* 26 U.S.C. § 6103(h)(2) (permitting the disclosure of tax return information to DOJ if relates "to a transactional relationship between a person who is or may be a party to the proceeding and the taxpayer which affects, or may affect, the resolution of an issue in such proceeding or investigation").

Moreover, sorting out the requirements of Section 6103 is not necessary here because, even if the Government violated the statute in the early stages of its investigation, Gyetvay would be entitled to no relief in this proceeding. *See Nowicki v. Commissioner of Internal Revenue*, 262 F.3d 1162, 1163 (11th Cir. 2001) ("imposition of the exclusionary rule is not warranted for a disclosure of return information which violates § 6103"); *see also United States v. Orlando*, 281 F.3d 586, 595-96 (6th Cir. 2002); *United States v. Michaelian*, 803 F.2d 1042, 1050 (9th Cir. 1986). Therefore, Judge

---

[10] Doc. 176 at 6.

Mizell's Order was correct.

### III. IRS Communications Evaluating Gyetvay's SFOP Filing

Finally, Gyetvay argues that he is entitled to internal IRS communications related to its determinations whether it had been defrauded by Gyetvay's SFOP filing. Gyetvay is apparently looking for communications where IRS personnel determined that the agency was not defrauded.[11] As a practical matter, the Government is not withholding any such documents. After collecting the relevant files from the IRS, the Government has not found any documents like those Gyetvay surmises must exist.

Given how the SFOP worked, that is unsurprising. The IRS made clear, in its public announcements concerning the SFOP, that it would process submissions under the SFOP like any other tax return. In that regard, "returns submitted under the streamlined procedures may be subject to IRS examination, additional civil penalties, and even criminal liability, if appropriate."[12] Therefore, that the IRS processed Gyetvay's tax returns under the SFOP, and did not select them for examination, does not mean that IRS civil personnel determined the returns and related paperwork were true and accurate.

It is well known to Gyetvay that the IRS processed his SFOP filing, and the government has produced documents reflecting that agency action. Any remaining documents reflecting the views of individual employees regarding Gyetvay's SFOP

---

[11] *Id.* at 8-9.
[12] https://www.irs.gov/individuals/international-taxpayers/streamlined-filing-compliance-procedures

filings—and we are aware of none—are immaterial to any question at issue in this prosecution, would not tend to exculpate him in any way, and are not discoverable. *See Neder v. United States*, 527 U.S. 1, 16 (1999) (internal quotations omitted) ("a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed."); *United States v. Neder*, 197 F.2d 1122, 1128 (11th Cir. 1999) ("a false statement can be material even if the decision maker did not actually rely on the statement").

Gyetvay's reliance on *United States v. Foshee* is unavailing. In that case, the court held that a defendant may argue that he lacked fraudulent intent by showing that no loss occurred. 569 F.2d 401, 403-04 (5th Cir. 401). But here, Gyetvay is not seeking evidence about whether his actions caused a loss to the IRS. He is seeking discovery as to whether IRS personnel believed the non-willfulness statement in his SFOP was true. As Judge Mizell concluded, that is an entirely different issue.[13]

*United States v. Nejad* does not help Gyetvay either. In that case, the defendant was charged with defrauding banks by subjecting them to potential enforcement proceedings by the Office of Foreign Assets Control ("OFAC"). 487 F. Supp. 3d 206 (S.D.N.Y. 2020). The government withheld communications – which the court concluded were exculpatory – showing that OFAC was aware of the alleged fraudulent activity, but took no enforcement action. *Id.* at 215. The analogous situation here would be if IRS personnel knew that Gyetvay's SFOP submission was fraudulent, yet

---

[13] Doc. 168 at 11-12.

took no action in response. That is not what occurred, and the Government is not aware of any communications showing otherwise.

## CONCLUSION

Magistrate Judge Mizell's December 19, 2022 Order denying the Defendant's motions to compel was correct. Therefore, this Court should overrule the Defendant's objections to the Order.


Dated: January 13, 2022                Respectfully submitted,

                                                    DAVID A. HUBBERT
                                                  Deputy Assistant Attorney General

                                                  STUART M. GOLDBERG
                                                  Acting Deputy Assistant Attorney General
                                                  For Criminal Matters
                                                  U.S. Department of Justice—Tax Division

                                     By:   <u>/s/ David Zisserson</u>
                                                  STANLEY J. OKULA, JR.
                                                  Senior Litigation Counsel
                                                  DAVID ZISSERSON
                                                  Assistant Chief
                                                  KEVIN SCHNEIDER
                                                  Trial Attorney
                                                  David.Zisserson@usdoj.gov
                                                  (202) 514-6479

**Certificate of Service**

I certify that on January 13, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ David Zisserson  
U.S. Department of Justice  
Tax Division