UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

    v.                                          Case No. 2:21-cr-83-TPB-NPM

MARK A. GYETVAY

### UNITED STATES' SUPPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION IN LIMINE

The United States respectfully submits this supplemental memorandum of law in support of the admissibility of records obtained from the Russian Federation's Federal Tax Service ("FTS"). At trial, such records would show that the defendant under-reported on his U.S. income tax returns compensation he received from Novatek, his Russian employer, and also failed to file other returns despite receiving millions of dollars of income. In his First Motion *In Limine*, the Defendant initially challenged the admissibility of the FTS records due to a purported general lack of trustworthiness. Doc. 175. At the February 7, 2023 motions hearing, however, the Defendant for the first time advanced a new argument for why he believes the Court should exclude the FTS records from trial: Russia's certification of the records, executed by a senior FTS official, did not satisfy the requirements of 18 U.S.C. § 3505(c)(2) to admit foreign business records because it did not state, on its face, that providing a false certification would subject the certifying official to criminal penalties in Russia.

That argument fails for one basic reason: the plain and unambiguous words of Section 3505(c)(2) do not require the certification itself to contain such language. Instead, the statute requires only that the maker be subject to criminal penalty in the event she provides a false certification. As demonstrated below, the FTS certification would subject a false certifier to criminal penalties in Russia. Therefore, the records are admissible under Section 3505 without the need to call a records custodian. In any event, apart from Section 3505, the records are admissible under the residual hearsay exception of Federal Rule of Evidence 807.

## BACKGROUND

In or about January 2020, the Internal Revenue Service transmitted to the FTS a tax treaty request, seeking Russian-based wage and income-related information for the Defendant. The FTS responded to the treaty request in November 2020 by providing copies of the Defendant's Personal Income Tax Certificates, Form-2NDFL, for the period 2005 to 2018, together with certain employment contracts. Also Included with the FTS's response was a "Certificate of Authenticity of Business Records" signed by the Deputy Commissioner of the FTS. That certification stated that the enclosed copies of Personal Income Tax Certificates:

- Were made at or near the time of the occurrence of the matters set forth therein, by (or from information transmitted by) a person with knowledge of those matters;

- Were kept in the course of the regularly conducted business activity of the Russian taxpayer;

- Were prepared or maintained in the course of the said business activity

- as a regular practice;

- If not original records, are duplicated of original records. The originals of these records are maintained electronically in the internal database of the Federal Tax Service or a premises of the registrar of the Russian company accordingly;

- Were provided upon requests of the IRS in accordance with the Article 25 of the Tax Treaty between Russia and the United States.

*See* Exh. A, attached hereto. The certification did not recite, in the body of the certification, that the Deputy Commissioner would be subject to criminal penalty in Russia for making a false certification.[1]

On December 8, 2020, the IRS requested that the FTS officials execute a revised certification—one that recited that the maker would be subject to criminal penalties in Russia for providing a false certification. *See* Exh. B at 2. On December 17, 2020, the Russian authorities responded that the FTS's "administrative procedures do not allow signing of documents containing the requested statement '*I further declare that this certification, if falsely made, would subject the undersigned to criminal penalty under the laws of the Russian Federation*' by the officials of the Federal Tax Service of Russia." *Id.* The FTS response further indicated that its previously provided "Certificate of Authenticity of Business Records" constituted the FTS's "only possible option for our assistance to you with regard to this letter." *Id.* at 1.

In response to the FTS's stated inability to include, in its written certification,

---

[1] A draft certification provided by the IRS to the FTS in connection with the treaty request contained a clause reciting that the certifying official acknowledged an understanding that she was subject to criminal penalty for providing an intentionally false declaration.

that making a false certification would be a crime in Russia, the IRS sent a follow-up inquiry to the FTS on February 25, 2021, requesting the FTS officials to confirm that Russian law did make the signing of a false certification a crime. The IRS also requested a citation to the specific statute that exposed a false certifier to criminal penalty. Exh. C. On March 18, 2021, the Russian authorities provided the following response:

> Article 292 of the Criminal Code of the Russian Federation provides responsibility for the introduction of deliberately false information by an official into official documents, as well as for the introduction of corrections into these documents that distort their actual content, if these acts are committed out of mercenary or other personal interest.

Exh. D. The response further provided an English translation of the relevant provisions of Article 292. *Id.*

The Government separately sought, from Russian legal expert William Butler,[2] confirmation that a Russian official who falsely certified, as "business records," documents maintained and produced by the FTS would be subject to criminal penalty in Russia. After analyzing the basic underlying facts and the applicable provisions of Russian law, Professor Butler concluded that such a false certification would violate certain provisions of Russian law, including Article 292 of the Criminal Code of the Russian Federation—the same provision cited by the Russian FTS officials. Exh. E.

---

[2] As previously noted, professor Butler is the John Edward Fowler Distinguished Professor of Law at the Dickinson School of Law. He has specialized, as an academic lawyer, in the law of the former Soviet Union and the successor Russian Federation for more than five decades. Professor Butler has provided expert reports and testified in federal court for the Government as an expert in Russian law. He recently published an English translation of the Criminal Code of the Russian Federation.

4

## GOVERNING LEGAL PRINCIPLES

In criminal cases, authenticity and hearsay exceptions for foreign business records are governed by 18 U.S.C. § 3505. Foreign records of regularly conducted activity will not be excluded by the hearsay rule if a "foreign certification" attests that:

- Such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

- Such record was kept in the course of a regularly conducted business activity;

- The business activity made such a record as a regular practice; and

- If such record is not the original, such record is a duplicate of the original.

18 U.S.C § 3505(a)(1)(A)-(D).

The same "foreign certification" also serves to authenticate the records. 18 U.S.C § 3505(a)(2). The statute defines a "foreign certification" as "a written declaration made and signed in a foreign country by the custodian of a foreign record of regularly conducted activity or another qualified person that, if falsely made, would subject the maker to criminal penalty under the laws of that county." 18 U.S.C. § 3505(c)(2). By enacting this statute, "Congress intended to create a simple, inexpensive substitute for the cumbersome and expensive procedures formerly required for the admission of foreign records of regularly conducted activity." *United States v. Ross*, 33 F.3d 1507, 1515 (11th Cir. 1994) (internal quotations omitted).

# DISCUSSION

I. **The Plain and Unambiguous Terms of 18 U.S.C. § 3505(c)(2) do not Require a Certification to Recite that the Certifier would be Subject to Criminal Penalty in the Foreign Country**

The "starting point in every case involving construction of a statute is the language itself." *International Brotherhood of Teamsters v.* Daniel, 439 U.S. 551, 558 (1979). When analysis of the statutory language "reveals that the provision has a plain meaning and unambiguous meaning with regard to the particular dispute in the case and the statutory scheme is coherent and consistent, then [judicial inquiry concerning the provision] is complete." *United States v. Zuinga-Arteaga*, 681 F.3d 1220, 1223 (11th Cir. 2012) (cleaned up). *See also United States v. Segarra*, 582 F.3d 1269, 1271 (11th Cir. 2009) ("The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry"); *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) ("We begin our construction of [a statute] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision"); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) ("When the words of a statute are unambiguous, then, this first cannon [of statutory construction] is also the last: judicial inquiry is complete") (cleaned up).

The language of 18 U.S.C. § 3505(c)(2) is clear and unambiguous. It states that a "foreign certification" is a declaration made in a foreign country by the custodian

"that, if falsely made, would subject the maker to criminal penalty under the laws of that county." The statute does *not* require that the declaration itself contain language indicating that it is being signed under criminal penalty. Rather, it requires only that, in the event the records custodian makes a false declaration, she would be subject to criminal sanctions according to the law of her country.

Indeed, courts construing this provision have held as much. In *United States v. Strickland*, 935 F.2d 822, 830-831 (7th Cir 1991), the defendant moved pre-trial to exclude Austrian bank records from evidence, arguing that the Government did not obtain a certification that "sufficient[ly]" complied with 18 U.S.C. § 3505(c)(2). The Austrian banks that produced the underlying bank records included cover letters that explained the documents and their method of use and maintenance. But the banks did not include a document containing language that the custodian was signing under criminal penalty.

To address the "criminal penalty" issue, the Government obtained a "signed, sealed statement" from an official at the Austrian Ministry of Justice—unaffiliated with the Austrian banks—verifying that the bank employees would have been guilty of perjury under the Austrian Criminal Code for false certifications. The District Court admitted the documents, and the defendant renewed on appeal his attack on the certification.

The Seventh Circuit found no error in the District Court's ruling, noting that the statute "does not require the use of a 'magic form' upon which the employee/record-provider of the foreign company must certify that he is aware that

his answers come under penalty of perjury." *Id.* at 831.  In upholding the sufficiency of the § 3505(c)(2) certification requirement based on the Austrian government official's verification of the criminal penalties faced by one who falsely certifies, the court observed that 18 U.S.C. § 3505 "was not intended to add technical roadblocks to the admission of foreign records, but, rather, to streamline the admission of such records." *Id.*[3]

Similarly, in *United States v. Gleave*, 786 F. Supp. 258, 278 (W.D.N.Y. 1992), the court concluded that foreign bank records were admissible under 18 U.S.C. § 3505.  In seeking to block the admission of the records, the defendant argued that a certification from a Cayman Islands bank did not comply with 18 U.S.C. § 3505(c)(2) because it did not recite that the signer would be subject to criminal penalty in the Cayman Islands.  Instead, it recited that the signer attested under penalty of criminal punishment—without specifying where such penalty could be imposed.  The district court rejected the attack on the certification, reasoning that

> § 3505(c) on its face does not require the foreign record custodian to *declare* that a falsely made statement would subject him to liability in his own country. [It] simply requires that if the record custodian makes a false declaration, he would be subject to criminal penalty according to the law of his country.

---

[3] Although the *Strickland* opinion contained language concerning whether the certifying official need be aware of the criminal nature of false swearing, 935 F.2d at 831, that language was *dictum*, given the Court's holding that the certification by the Austrian Justice Ministry official—which noted simply the criminal consequences faced by the bank officials if they falsely certified the records as business records—was sufficient.  Moreover, as noted, the plain words of the statute do not require that the certifier acknowledge an awareness that false swearing is a crime.

*Id.* (emphasis in original). The court further observed that "§ 3505 contains no requirement that the foreign certification mention which penalties the record custodian would face for the making of a false statement." *Id.*

As in *Strickland* and *Gleave*, this Court should reject any contention that 18 U.S.C. § 3505(c)(2) requires the use of some "magic form or language," or that it requires the certifying official to acknowledge that falsely certifying is a crime under local law. A plain reading of the statute reveals that no such certification procedure is required. Instead, all that is required is that the certifying official establish the business record nature of the documents (by addressing the § 3505(a)(1)(A)-(D) factors), and that the Government establish that a false certification could subject the certifier to criminal sanction in Russia.

As established by the Russian authorities' communications with the IRS and Professor Butler's opinion, the Deputy Commissioner of the Russian FTS would be subject to criminal penalty in Russia for making a false certification. *See United States v. Hing Shair Chan*, 680 F. Supp. 521, 524 (E.D.N.Y. 1988) (when considering whether a certification complied with 18 U.S.C. § 3505(c)(2), "the court may take judicial notice of foreign law and legal terms under Rule 26.1 of the Federal Rules of Criminal Procedure, considering any relevant source whether or not submitted by a party"). And the certification plainly complies with the other requirements of 18 U.S.C. § 3505. Therefore, the Russian records are accompanied by a valid "foreign certification" as it is defined in 18 U.S.C. § 3505(c)(2). This certification serves to authenticate the

records and admit them over a hearsay objection without the need to call a records custodian at trial.

II. **The Residual Hearsay Exception Provides a Separate and Independent Basis for Admissibility**

Separate and apart from the requirements of 18 U.S.C. § 3505, the documents are nonetheless admissible under the residual hearsay exception. Federal Rule of Evidence 807 provides that a hearsay statement is not excluded by the hearsay rule if (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative for which it is offered than any other evidence that the proponent can reasonably obtain; and (4) admitting it serves the interests of justice. *See also United States v. Rodriguez*, 218 F.3d 1243, 1246 (11th Cir. 2000); *United States v. Munoz*, 16 F.3d 1116, 1121-22 (11th Cir. 1994) (upholding admission of Panamanian bank documents under the residual hearsay exception because they met all four requirements). "'The district court has considerable discretion in determining admissibility under [the residual exception].'" *Rodriquez*, 218 F.3d at 1243 (quoting *Munoz*, 16 F.3d at 1222). The Court should use that discretion to admit the evidence because the FTS records easily satisfy each of these four requirements.[4]

---

[4] Federal Rule of Evidence 807(b) requires the proponent to give reasonable written notice of its intention to offer evidence under the residual hearsay exception. This notice must be provided in advance of the trial or hearing unless the court, for good cause, excuses a lack of earlier notice. This filing serves to provide notice to the Defendant and the Court of the Government's intention to offer the FTS records pursuant to the residual hearsay exception, but only if the Court concludes that the certification accompanying the records does not satisfy 18 U.S.C. § 3505(c)(2). To the extent that the Defendant argues that this notice is late, there is certainly good cause to excuse a lack of earlier notice. Simply put, the Defendant did not object to the certification in his First Motion *in Limine* despite

First, the records carry guarantees of trustworthiness. They represent the annual—and legally-mandated—reporting to the FTS by the Defendant's Russian employer of compensation and tax withholdings relating to the Defendant. In the Government's response to the defendant's motion *in limine*, we compared the FTS records for November 2010 to a letter from Novatek that the Defendant submitted to U.S. immigration authorities to demonstrate his income. Doc 182, Exhibits A through C. The amounts match exactly, thus providing corroboration for the information contained in the FTS records. *See United States v. Valdez-Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994) ("we've recognized that corroborating evidence is a valid consideration in determining the trustworthiness of out-of-court statements for the purposes of Rule 803(24) [the prior location of the residual exception]").[5]

Second, the FTS records will also be offered to demonstrate material facts. In particular, those records show the Defendant's annual salary and other compensation that Novatek paid him. Other evidence will show that the amounts the Defendant reported on his U.S. tax returns were materially less than the amounts reflected on the

---

contesting the admission of the FTS records on other grounds. Had the Defendant objected on this basis in his pleading, the Government would have addressed his objections to the certification in its Response. Instead, he argued it for the first time during the hearing and the Court allowed the Government to submit additional briefing. *See also Munoz*, 16 F.3d at 1122 ("There is no particular form of notice required under the rule. As long as the party against whom the document is offered has notice of its existence and the proponent's intention to introduce it – and thus has an opportunity to counter it and protect himself against surprise – the rule's notice requirement is satisfied").

[5] It is also noteworthy that the Defendant did not provide any direct evidence challenging the accuracy of the FTS records in his motion. Given his position at Novatek, one of Russia's largest gas companies, it stands to reason that the Defendant could have easily procured documents from Novatek that would have contradicted the amounts reflected in the FTS records, if such conflicting documents existed. The Defendant provided nothing other than generalized statements that the Court should not trust the records because Russia does not have the same payroll tax laws as the U.S.

FTS records (on one occasion by over $1,000,000). The FTS evidence, therefore, is critical to showing that the Defendant filed false U.S. tax returns and also failed to timely file returns despite being required to do so. Indeed, it is hard to imagine records that could be more critical to establishing that the Defendant provided false compensation amounts to his accountant and then failed to file returns with the IRS despite earning millions of dollars of income.

Third, the Government cannot reasonably obtain this information from other sources. In the U.S., wage income evidence is obtained from either a taxpayer's employer, the IRS, or both. The Defendant's employer, however, is a Russian company beyond the subpoena power of the Government. Accordingly, to test the accuracy of the compensation information provided by the Defendant to his accountant and the IRS, the Government submitted a tax treaty request to the Russian authorities, who responded with the records from the FTS. There simply were no other steps the Government could have reasonably taken to obtain evidence of the Defendant's income from Novatek, his Russian employer.

Finally, admitting the FTS records plainly serves the interests of justice. In order to determine whether the Defendant acted willfully, the jury should be given the full picture of the Defendant's unreported income, a significant portion of which derived from his Russian compensation. Absent utilization of the FTS records, the Government will not be able to establish the full measure of that Russian income, as no Novatek witness or other custodian is available to the Government. Indeed, as a result of recent world events involving Russia, the Tax Treaty between the two

countries has been suspended.[6] It would be a disservice to the interests of justice if these critical records were excluded, especially where, as here, the Russian officials separately confirmed that a false certification would subject the maker to criminal penalties in Russia and also said that their administrative procedures prohibited them from including such language in the certification. *See Valdez-Soto*, 31 F.3d at 1471 ("almost fitting within one of these exceptions cuts in favor of admission, not against"). It is therefore hard to think of a more appropriate situation to admit records pursuant to the residual hearsay exception. *See Munoz,* 16 F.3d at 1122 ("The district court's admission of this evidence was consistent with the general requirement in that rule to provide a speedy, inexpensive and fair trial designed to reach the truth"); *United States v. Friedman*, 593 F.2d 109, 119 (9th Cir. 1979) (concluding that "the policy of the rules has been observed" when the Government established the trustworthiness of the documents and the unavailability of alternative evidence); *Hing Shair Chan*, 680 F. Supp. at 526 (although finding that the certification satisfied 18 U.S.C. § 3505(c)(2), the court separately concluded that the records were admissible under the residual hearsay exception).

---

[6] *See* David Lawder, *EXCLUSIVE: U.S. Suspends Tax Information Exchange with Russian Authorities*, Reuters, April 5, 2022, available at https://www.reuters.com/world/us/exclusive-us-suspends-tax-information-exchange-with-russian-authorities-treasury-2022-04-05/.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's motion to exclude the FTS records from evidence at trial, and instead, order that the records are admissible.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

STUART M. GOLDBERG
Acting Deputy Assistant Attorney General
For Criminal Matters
U.S. Department of Justice—Tax Division

/s/ Kevin Schneider
STANLEY J. OKULA, JR.
Senior Litigation Counsel
DAVID ZISSERSON
Assistant Chief
KEVIN SCHNEIDER
Trial Attorney
kevin.schneider@usdoj.gov
(202) 616-3427

**Certificate of Service**

I certify that on February 15, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ Kevin Schneider
U.S. Department of Justice
Tax Division
