UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.   Case No. 2:21-cr-83-TPB-NPM

MARK A. GYETVAY

## ORDER

In this criminal matter concerning alleged acts of tax evasion, fraud, and missing tax returns and foreign-bank-account reports (Doc. 101), the government has sought records related to a Swiss bank account that defendant Mark Gyetvay opened with Coutts bank in the name of Felicis Commercial Corporation. With several impediments to any subpoena that might be directed to Coutts (Doc. 90 at 7), the government—about four years ago—made a request for the records under a treaty with Switzerland (Doc. 71-2 at 21); and that request remains pending. The government also obtained an order from this court approving the use of a Rule 17 subpoena directed to Gyetvay for the records. (Doc. 130). After Gyetvay's objections to the order were overruled (Doc. 173), Gyetvay's counsel informed the government that he intended to comply with the court-ordered subpoena (Doc. 203-1 at 4). But Gyetvay has since made an about face and refuses to comply. So, the government now moves to compel compliance. (Doc. 200). Because Gyetvay's attempt to justify noncompliance rests on nothing more than false constructs, the government's motion is granted and Gyetvay must immediately comply.

In 2007, Gyetvay established Felicis and opened the Coutts Felicis account. (Docs. 71-2 at 3-4; 71-7 at 9). The account opening documents, such as the Swiss Form A, identified Gyetvay as the sole beneficial owner. (Doc. 71-2 at 4). Notably, when Gyetvay received millions of dollars of Novatek stock in 2009 pursuant to an IPO, it was deposited into the Coutts Felicis account. (Doc. 71-7 at 6, 9). Felicis was dissolved in 2016. (Doc. 71-7 at 11). And in March 2017, Gyetvay filed a delinquent 2009 federal income tax return reporting the Novatek stock in the Coutts Felicis account as wage income. (Doc. 71-7 at 7-8). Gyetvay also filed delinquent FBARs reporting that he owned the Coutts Felicis account. (Docs. 71-2 at 14; 90-3; 94 at 2).

Accordingly, there is no dispute about Gyetvary's control over the Coutts Felicis account. Nor is there any dispute about the government's ability to authenticate records from the account through one or more witnesses other than Gyetvay and by comparison to other documents. And with respect to this account, the government has shown with reasonably particularity that it knows the following customary-account documents exist and are within Gyetvay's control: account-opening documents, Know Your Customer documents, signature cards, statements of beneficial ownership, Forms A, account statements, transaction instructions and documents, account-closing documents and instructions, and account correspondence between Gyetvay and Coutts. *See, e.g.*, Docs. 71-2; 71-4; 71-6; *see generally United States v. Fridman*, 974 F.3d 163, 175 (2d Cir. 2020) ("if the

Government can prove it knows that an individual controls the disposition of assets in an account, it follows that that individual controls the requested documents[1] associated with that account"). Thus, under the foregone-conclusion doctrine from *Fisher v. United States*, 425 U.S. 391 (1976), the court has twice found it proper for the government to subpoena Gyetvay for these nine types of records.[2]

Now, Gyetvay refuses to comply with the subpoena and suggests we should relitigate the foregone-conclusion ruling[3] on two grounds: his contention that Coutts refused to furnish documents to him upon his request, and, paradoxically, his conjecture that Coutts has sent him more documents than he requested and thereby changed the scope of the subpoena. Neither suggestion is true, and whether Gyetvay

---

[1] The "requested documents" in *Fridman* comprised opening and closing documents, bank statements, Know Your Customer documents, signature cards, certificates of beneficial ownership, transfer and deposit slips, cancelled checks, transfer instructions, source-of-funds documents, letters of reference, and "[e]xisting bank documents … sufficient to show the flow of funds" between a known and unknown bank accounts on five occasions. *Fridman*, 974 F.3d at 172.

[2] As explained in a declaration from Coutts, these records are available to Gyetvay at his request as the beneficial owner of an account that was opened in the name of a company that has since been dissolved. *See* Doc. 71-4 at 3-4. Notwithstanding Gyetvay's protestations to the contrary, the qualified opinions he offered from a Swiss lawyer (Doc. 141-3) did not sufficiently controvert—and in some respects actually support—the Coutts declaration.

[3] Gyetvay presents requests for relief in his responsive memorandum and not by motion. This is improper. *See* Fed. R. Crim. P. 47(a) ("A party applying to the court for an order must do so by motion."); M.D. Fla. 3.01(a), (b) (separately describing motions and responses). Moreover, he improperly seeks to use Rule 16 discovery as a sword rather than a shield. As the court has previously explained in this matter, "Rule 16 requires the disclosure of items material to raising a 'shield' to the criminal charge and not to advancing any 'sword' that challenges the conduct of the government's investigation or prosecution." (Doc. 168 at 7). Further, Gyetvay offers no non-speculative and relevant basis to conduct any discovery about the government's communications with Coutts or its representatives.

might have more in his hands than what is requested in the subpoena is irrelevant.

Gyetvay represents that he asked Coutts for the documents listed in the subpoena and that Coutts refused to produce any records to him. (Doc. 203 at 1). Indeed, he makes this representation in various forms some fourteen times or more. (Doc. 203). But a false statement does not acquire truth by virtue of repetition.

By his own account, Gyetvay's counsel sent a "carefully drafted" letter to Coutts's outside counsel in the United States attaching a copy of the subpoena and explaining that, over his objections, the subpoena had been approved by the court. (Doc. 203 at 7).[4] Initially, Coutts conveyed, through its outside counsel in the United States, that the letter did not appear to ask Coutts to take any action. (Doc. 200-2). Then, three weeks later, Coutts's outside counsel in Switzerland wrote Gyetvay's counsel to convey an understanding that Gyetvay had requested a copy of the account file and related documents regarding the Coutts Felicis account. Accordingly, "all documents that the bank normally provides to clients" were placed on a USB drive and sent by courier to Gyetvay's counsel. (Doc. 200-3). So, in short, Coutts never refused to produce documents to Gyetvay, and it has instead produced documents to him.

---

[4] Gyetvay's response to the government's motion falsely represents to the court that the orders approving the subpoena were attached to the letter. (Doc. 203 at 7). But the letter itself makes plain that the orders were not attached. Rather, the letter directs any reader to the court's docket to find them. And, to the contrary, it was Gyetvay's objections that were attached to the letter.

Gyetvay's other contention—that Coutts has sent him more than what he asked for and thereby changed the scope of the subpoena in contravention of the court's orders—rests on speculation. The letter from Coutts's outside counsel in Switzerland plainly states that "all documents that the bank normally provides to clients" were furnished to Gyetvay at his request. (Doc. 200-3). But Gyetvay points to an ambiguous sentence just before that statement to suggest that Coutts might have sent him more than that. That sentence states: "Please find on the enclosed USB drive all existing documents and other documents relating to this account."[5] Neither this sentence nor anything else in the letter makes plain that the universe of existing documents is broader than whatever documents the bank would normally provide to clients. So Gyetvey's argument on this score is based on mere guesswork.

Even if Gyetvay's supposition turns out to be true, it does not matter. Depending on the circumstances, generic and subjective requests like "all existing bank documents sufficient to trace certain transactions" can be directed to a defendant by subpoena under the foregone-conclusion doctrine. *See Fridman*, 974 F.3d at 172. And besides, there are no categorical requests like "all bank documents" or "all customary account records" at issue here. Rather, the subpoena enumerates nine types of documents. Notwithstanding any broader production by Coutts—or

---

[5] This sentence seems to be a slim reed upon which to build an argument because it appears nonsensical. Read literally, the sentence suggests that the USB drive somehow contains nonexistent documents.

any broader possession by Gyetvay[6] of records related to the Coutts Felicis account—he need only produce what the subpoena specifically commands. Thus, nothing related to the scope of production by Coutts changes the scope of the subpoena, contravenes the court's orders, or gives rise to any need to revisit them.[7]

Accordingly, the government's motion to compel (Doc. 200) is **GRANTED**. Gyetvay's requests for discovery and a hearing are **DENIED**. And Gyetvay's motion for leave to file a sur-reply is **DENIED** as moot. By **March 13, 2023**, Gyetvay must comply with the commands of the subpoena.

**ORDERED** on March 8, 2023.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

---

[6] Aside from the documents that Coutts just sent to Gyetvay, he has maintained foreign bank account records in his possession. He previously produced such items to the government in response to a subpoena requesting records for which he had a regulatory obligation to maintain. *See* Doc. 82 at 4.

[7] Inexplicably, Gyetvay erroneously complains that the government "continues to conceal" its possession of some "opening documents" for the Coutts Felicis account records. (Doc. 203 at 3, 5-6). This apparently refers to three pages of "screen shots" that the government obtained from a whistleblower. (Doc. 203-3 at 34-35). But only one of the images—an apparently incomplete signature card for someone other than Gyetvay—might have been related to opening the account. And besides, Gyetvay made this very same point in his September 21, 2022 objection to the court's order, so this detail was revealed some six months ago and cannot be characterized as concealed. (Docs. 141 at 12; 141-1). Moreover, it has never been any secret that the government previously obtained some Coutts Felicis account records—the government explicitly stated as much in its December 2021 motion to approve the subpoena. *See* Doc. 71 at 8.