**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

UNITED STATES OF AMERICA

v.                            CASE NO. 2:21-cr-83-TPB-NPM

MARK A. GYETVAY,

    Defendant.
_____/

## DEFENDANT'S TRIAL BRIEF

Mark A. Gyetvay, by and through counsel, submits this Trial Brief pursuant to the Court's Order at the Motion Proceedings held on February 7, 2023.

## I.    The Genesis of the Government's Case Against Mr. Gyetvay[1]

### 1. The IRS Streamlined Procedures Amnesty Program

Beginning in 2009, the Internal Revenue Service (IRS) began offering amnesty programs for U.S. taxpayers with undisclosed Swiss/foreign bank accounts. The first program, the Offshore Voluntary Disclosure Program (OVDP), allowed taxpayers to file income tax returns reporting the income from the Swiss/foreign bank accounts and delinquent Foreign Bank Account Reports (FBARs) in exchange for reduced civil penalties and avoid potential

---

[1] *See generally*, ECF No. 137 at 5-8.

criminal investigation/prosecution. In 2014, the IRS announced expanded amnesty programs—"Streamlined Procedures"—designed to bring in additional U.S. taxpayers into compliance with their foreign account reporting, pay reduced penalties. Criminal investigation/prosecution under the Streamlined Procedures was within the sole discretion of the Civil division of the IRS.[2]

### 2. The Swiss Bank Program

In 2013, the Department of Justice Tax Division (the "Tax Division") and the Swiss government announced the Swiss Bank Program (SBP), which provided a path for Swiss banks that had assisted U.S. taxpayers in hiding their Swiss bank accounts. If accepted, the Swiss bank was required to cooperate with the Tax Division, pay a fine, and enter into an agreement wherein the Tax Division agreed not to investigate/prosecute the Swiss bank.

### 3. Coutts and the Tax Division SBP

Coutts & Co. ("Coutts"), a Swiss bank, participated in the Tax Division SBP. In December 2015, Coutts entered into a non-prosecution agreement with the Tax Division (the "Coutts NPA"), admitted to holding 1,337 accounts for U.S. customers, paid a penalty of $78,484,000, and agreed to cooperate with

---

[2] *See* IR-2014-73: IRS Makes Changes to Offshore Programs; Revisions Ease Burden and Help More Taxpayers Come into Compliance (June 18, 2014) available at https://www.irs.gov/pub/irs-news/IR-14-073.pdf. (last accessed Mar. 9, 2023).

the Tax Division's efforts to investigate and prosecute U.S. taxpayers with unreported foreign accounts. Four years later Coutts admitted that it lied during negotiations related to the Coutts NPA. Coutts agreed to an addendum to the Coutts NPA and paid an additional penalty of $27,900,000. Two other Swiss banks, Hyposwiss Private Bank Genève S.A. ("Hyposwiss") and Falcon Private Bank AG ("Falcon") entered into non-prosecution agreements to resolve each bank's criminal misconduct.

### 4. Mr. Gyetvay's Swiss Bank Accounts and Participation in the Streamlined Program

Mr. Gyetvay opened bank accounts at Coutts during a period when he worked and resided in Russia. Mr. Gyetvay later moved the Coutts accounts to Hyposwiss, which was then acquired by Falcon. In 2014, Mr. Gyetvay retained U.S. lawyer Matthew Ledvina (a former partner at a prestigious international law firm) to advise him with respect to disclosing his Swiss accounts to the IRS. Shortly thereafter, Mr. Gyetvay allowed Coutts to provide the Tax Division with information related to his accounts, so that Coutts could mitigate its own penalties under the SBP. In 2015, Mr. Ledvina advised Mr. Gyetvay to enter the Streamlined Procedures by filing tax returns for 2011, 2012, and 2013, paying $4,649,609 in tax for those years, and filing Foreign Bank Account Reports reporting the Swiss accounts for 2008 through 2013. In December 2015, Mr. Gyetvay's attorneys submitted a letter to Coutts allowing

the bank to notify the Tax Division that Mr. Gyetvay had entered the Streamlined Procedures amnesty program reporting his Swiss accounts and related income.

The lawyers and accountants who prepared Mr. Gyetvay's Streamlined Procedures submission were aware that Mr. Gyetvay had Swiss accounts in 2006, 2007, and 2008. The lawyers and accountants did not recommend that Mr. Gyetvay amend returns for 2006, 2007, or 2008. Rather, those professionals advised him initially to file only returns for 2011 through 2013 and later to file the 2009 and 2010 returns.

## II.  The Indictment Against Mr. Gyetvay

### 1. The Indictments

The Tax Division obtained an indictment of Mr. Gyetvay in September 2021, despite the fact the IRS accepted Mr. Gyetvay's Streamlined Procedures submission, accepted his returns for 2009 through 2015, and issued him a $742,147 refund for 2015.[3] Superseding indictments were filed in December 2021 and May 2022.[4] The operative indictment (ECF No. 101) charges Mr. Gyetvay with three counts of aiding or assisting the preparation of false tax returns for tax years 2006, 2007 and 2008;[5] three counts of tax evasion for tax

---

[3] *See* ECF No. 3.

[4] *See* ECS No. 60 and 101.

[5] *See* ECF No. 101 ¶¶ 38-39.

years 2007, 2008, and 2009;[6] five counts of failure to file income tax returns for 2010, 2011, 2012, 2013, and 2014;[7] one count of making a false statements to the IRS in 2015;[8] one count of failure to file an FBAR for calendar year 2014;[9] and two counts of wire fraud.[10]

## 2. Elements of Each Offense

Counts One through Eleven charge various criminal tax offenses which elements are laid out in Defendant's Proposed Jury Instructions which will be filed subsequently. Each of these offenses contain the heightened intent element of willfulness which means the government must prove the defendant's subjective intent to violate the tax laws and the absence of good faith. Count Twelve charges Mr. Gyetvay with making a false statement to the IRS pursuant to 18 U.S.C. § 1001.

## a) Failure to File an FBAR

Count Thirteen alleges violations of 31 U.S.C. §§ 5314 and 5322(a) and 31 C.F.R. §§ 1010.350, 1010.306(c)-(d), and 1010.840(b), which requires that the government prove beyond a reasonable doubt that Mr. Gyetvay willfully failed to file an FBAR for the 2014 calendar year, which was due on or before

---

[6] *See id.* ¶¶ 40-43.

[7] *See id.* ¶¶ 44-45.

[8] *See id.* ¶¶ 46-47.

[9] *See id.* ¶¶ 48-49.

[10] *See id.* ¶¶ 50-51.

June 30, 2015. The allegations set out in Count thirteen are therefore mystifying, as elsewhere in the indictment the government concedes that Mr. Gyetvay filed his 2014 FBAR on or about June 25, 2015—*i.e.*, five days *before* the filing deadline.[11] Accordingly, it should be undisputed that Mr. Gyetvay did not "fail" to timely file an FBAR for 2014. To the extent the government's theory is that Mr. Gyetvay should have filed a *separate* 2014 FBAR separately reporting his interest in the so-called "Opotiki" account, the government is wrong.[12]

### b) Wire Fraud

Counts Fourteen and Fifteen allege violations of 18 U.S.C. § 1343, which requires the government to prove beyond a reasonable doubt that when Mr. Gyetvay filed his 2014 FBAR (Count Fourteen), and when he emailed his attorneys to approve the non-willfulness statement included with his Streamlined Procedures submission (Count Fifteen), he intentionally engaged in a scheme or artifice to defraud the United States of money or property and

---

[11] *See id.* ¶¶ 31, 53.

[12] *See, e.g.*, "Report Foreign Bank and Financial Accounts" https://www.fincen.gov/report-foreign-bank-and-financial-accounts (last accessed Mar. 5, 2023) ("A United States person that has a financial interest in or signature authority over foreign financial account**s** must file *an FBAR* if the aggregate value of the foreign financial account**s** exceeds $10,000 at any time during the calendar year.") (emphasis added). *Cf. Bittner v. United States*, 598 U.S. ___ (Feb. 28, 2023), No. 21-1195, slip op. at 16 (observing draconian outcomes that would arise if taxpayers were subject to multiple civil or criminal FBAR sanctions on a per-account (rather than per-FBAR) basis).

caused the use of interstate wires in connection with that scheme. *See United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007).

These allegations are also deficient, as Mr. Gyetvay did not intend to take any property or money "out of" the hands of the United States government. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) ("A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another *out of* money or property.") (emphasis added).[13]

### 3. Tax Charges Are Entitled To Special Treatment and Good Faith and Good Faith Reliance on Counsel are Complete Defenses in this Case[14]

The charges against Mr. Gyetvay are related to tax filings or other submissions to the IRS. As noted above, the government must prove the elements of each charge beyond a reasonable doubt, including the element that Mr. Gyetvay acted willfully. Moreover, unlike other criminal offenses, alleged tax offenses are accorded "special treatment" in light of "the complexity of the

---

[13] In *Kelly v. United States*, 140 S. Ct. 1565 (2020), the Supreme Court held that to establish money-or-property fraud under 18 U.S.C. § 1343 (wire fraud), the government must prove that a direct object of the scheme was obtaining money or property from the victim. *See also United States v. Cleveland*, 531 U.S. 12, 23 (2000) (mail and wire fraud statutes are "limited in scope to the protection of property rights, and the ethereal right to accurate information doesn't fit that description").

[14] *See generally*, ECF No. 137 at 2-3 (*Cheek* standard and good faith as complete defense in tax cases); ECF No. 160 at 4 (right to have jury instructed as to reliance on counsel theory of defense).

tax laws." *Cheek vs. United States*, 498 U.S. 192, 201 (1991). Therefore, when considering whether Mr. Gyetvay acted willfully, the jury must consider Mr. Gyetvay's subjective intent to determine if he "voluntarily and intentionally violated" a known legal duty. *Id.* In this context, good faith is a complete defense. *See* Pattern Jury Instruction No. S9, Criminal Cases, Eleventh Circuit (March 2022). Furthermore, good faith reliance on counsel is another complete defense. *See* Pattern Jury Instruction No. S18m Criminal Cases, Eleventh Circuit (March 2022).

### 4. The Statute of Limitations

Mr. Gyetvay moved to dismiss all of the charges against him because the applicable statutes of limitations have expired, and the Tax Division has taken the unprecedented step of attempting to combine two separate tolling provisions to save the indictment against Mr. Gyetvay.[15] The Court denied Mr. Gyetvay's motion without prejudice to renew it at trial.[16] Mr. Gyetvay continues to oppose the government's use of two statutory exceptions to the otherwise applicable statute of limitations in this case: (1) the tolling provision

---

[15] *See* ECF No. 122

[16] *See* ECF No. 169 at 2-3 ("The Court declines to rule at this time on the Government's asserted exceptions to the statute of limitations. The motion [to dismiss] is denied, without prejudice to being renewed at trial."). *See also* ECF No. 193 ("The motion is deferred regarding the Government's request that the Court find the tolling order signed by Judge Chappell properly tolling the statute of limitations on April 3, 2020.").

found in Title 26 for time the defendant was outside the United States, and (2) the tolling provision found in Title 18 for when the government seeks an order tolling the statute while requests for foreign evidence are pending.

The government has cited no case which approved tacking on the time outside the United States exception found in Title 26 on top of the foreign evidence tolling order exception found in Title 18. The practical impact of permitting these two exceptions to be used in this manner would be to create a never-ending statute of limitations for U.S. citizens, like Mr. Gyetvay, who spend considerable time outside the country. Such travel abroad for legitimate purposes, such as employment, is not uncommon and is completely legal. Mr. Gyetvay was never a fugitive from justice nor otherwise attempted to avoid the jurisdiction of the United States.[17]

## III.  Anticipated Evidentiary Issues

The parties have briefed and argued a number of pretrial evidentiary and related issues as follows.

---

[17] "The general working presumption in federal civil and criminal cases is that a federal civil cause of action or criminal offense must have some statute of limitations and must not allow suits to be brought forever and ever after the acts in question." *PHH Corp v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 50 (D.C. Cir. 2016), *vacated on other grounds* 881 F.3d 75 (D.C. Cir. 2018) (holding that the CFPB did not have an unlimited statute of limitations on administrative enforcement actions). "Statutes of limitations are intended to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Gabelli v. SEC*, 568 U.S. 442, 448 (2013) (internal quotation marks omitted).

### 1. Defendant's Motion to Exclude Swiss Bank Records Under 18 U.S.C. § 3505[18]

Mr. Gyetvay has no objection to the admission of customary bank statements made at or near the time of the events being recorded at trial but has objected to purported bank records that contain false information.[19] The Court agreed that "[t]raditional bank statements are definitely admissible, and the Court reserve[d] ruling as to associated – other documents."[20] Coutts, Hyposwiss, and Falcon admitted in their non-prosecution agreements that they falsified records including beneficial ownership and Know Your Customer records that the government intends to introduce. Those records are false and misleading and should not be admitted because they are not reliable.[21]

### 2. Defendant's Motion to Exclude Russian Tax Records[22]

---

[18] *See* ECF No. 175.

[19] The government argued that "all of the underlying records were created years before their resolution of [the Banks'] case," Tr. of Feb.7, 2023 Motion Proceedings at 63:4-6. That statement is not true for all of the customary bank records. For example, a bank statement listed on the government's exhibit list shows a "Date of production" of "14 July 2014" for a statement covering the period January 1, 2008 to December 31, 2008. *See* USPROD-0222757.

[20] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 15:21-25 ("Traditional bank statements are definitely admissible, and the Court reserves ruling as to associated – other associated documents."). *See also* ECF No. 194.

[21] *See* ECF No. 175.

[22] *See* ECF No. 175.

Mr. Gyetvay objected to the admission of tax records that the government obtained from the Russian Federal Tax Service (FTS) because the purported records did not satisfy the requirements of 18 U.S.C. 3505(c)(2) and because the records are unreliable on their face. The Court granted Mr. Gyetvay's motion because the government did not satisfy the requirements of 18 U.S.C. § 3505(c)(2).[23]

In addition to the certification failing the requirement of Section 3505(c)(2), the Russian FTS Records also lack the required corporate seal, lack a corporate officer signature, and otherwise contain numerous anomalies inconsistent with a reliable payroll tax record. Therefore, they are inherently untrustworthy and should remain excluded.

Mr. Gyetvay has also argued that the FTS records should not be admitted pursuant to the residual hearsay exception.[24]

### 3. Government Motion for Advice-of-Counsel Communications[25]

The Court denied the government's motion for an order directing Mr. Gyetvay to comply with a trial subpoena seeking documents related to a reliance of counsel defense but directed that the defense produce any

---

[23] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 31:2-9 and 33:9-15. *See also* ECF No. 194.

[24] *See* ECF No, 202 at 7-8.

[25] *See* ECF No. 156.

additional documentation not already on its exhibit list at the close of the Government's case and before the commencement of the defense case.[26]

### 4. Government Motion to Preclude Advice-of-Counsel Argument and Evidence[27]

The Court denied the government's motion to preclude Mr. Gyetvay from arguing at trial and presenting evidence that he relied on the advice of his attorneys in connection with the conduct alleged in the indictment.[28] Furthermore, the Court rejected the government's argument that Mr. Gyetvay should be barred from raising an advice-of-counsel defense during opening statements.[29]

This motion was denied for good reason because Mr. Gyetvay has a constitutionally protected right to present a defense—including reliance on counsel.[30]

---

[26] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 41:4-11 and 59:14-19. *See also* ECF No. 193.

[27] *See* ECF Nos. 156, 160, and 167.

[28] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 55:11-14 ("I am definitely not ruling today you cannot under any circumstances do an advice-of-counsel defense. I'm not doing that now. It would be premature."). *See also* ECF No. 192.

[29] *See id.* at 59:5-12.

[30] "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted).

Mr. Gyetvay also has a right to have the jury instructed on his "theory of defense"—including reliance on counsel—when that instruction is accurate, not substantially covered by other instructions, and addresses a point in the trial so vital that failure to give the instruction would seriously impair the defendant's ability to defend the charges.[31] In the Eleventh Circuit: "[t]o receive a requested jury instruction in this Circuit, a defendant's burden is light: 'any foundation in the evidence' is sufficient." *United States v. Kottwitz*, 627 F.3d 1383, 1384 (11th Cir. 2010) (reversing defendants' tax convictions and remanding for new trial based on district court's failure to instruct jury on the good faith reliance defense); *see also United States v. Zlatogur*, 271 F.3d 1025, 1030 (11th Cir. 2001) ("[a]s long as there is some basis in the evidence and legal support, the jury should be instructed on a theory of the defense.").

### 5. Government Motion to Exclude Good Conduct Evidence[32]

---

[31] *See United States v. Opdahl*, 930 F.2d 1530, 1534 (11th Cir. 1991). Indeed, failure to instruct the jury under such circumstances constitutes reversible error. *See United States v. Eisenstein*, 731 F.2d 1540, 1545-46 (11th Cir. 1984) (". . . in our system of American justice, a defendant must be allowed the opportunity to try to establish the suggested unrealism. . .").

[32] *See* ECF No. 129.

The Court denied the government's motion to preclude evidence regarding Mr. Gyetvay's good conduct without prejudice, subject to appropriate objections at trial.[33]

### 6. Government Motion Regarding Professor Butler[34]

The Court granted the government's motion related to testimony from its expert witness, law professor William Elliott Butler, but limited Professor's Butler's testimony "to translation matters only."[35] However, Mr. Butler's translation related to the Russian FTS records that the Court excluded.[36]

The government conceded that Professor Butler "is not an expert in Russian taxes."[37] Despite this concession and the Court's limitation that Mr. Butler testify "to translation matters only," the government in its Trial Brief seeks to have the Court credit Professor as "an expert in the field of Russian law." ECF No. 210 at 24-25. This violates the Court's express ruling that Butler is limited to testifying about translation matters only.

The government also seeks to improperly limit Mr. Gyetvay's cross examination of Professor Butler at trial because the defense has not put forth

---

[33] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 42:6-10. *See also* ECF No. 191.

[34] *See* ECF No. 174.

[35] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 45:14-17. *See also* ECF No. 193.

[36] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 31:2-9 and 33:9-15. *See also* ECF No. 194.

[37] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 45:12.

its own competing translation of the excluded Russian FTS records.[38] ECF No. 210 at 11-12. But the government's argument that Butler cannot be cross examined on the "accuracy of his translation or the difficulty of translating Russian to English" is directly contradicted by the government's own authority for this point. *See United States v. Curbelo*, 726 F.3d 1260 (11th Cir. 2013). Indeed, the *Curbelo* court specifically stated that: "Defendant's failure to present his own transcripts ***did not waive*** his Confrontation Clause argument." *Curbelo* at 1271 (emphasis added).

In *Curbelo*, an agent (Diaz) testified as to the accuracy of transcripts that had been worked on by a translator who was not called as a witness. The court went on: "***Nothing prevented Defendant from vigorously cross-examining*** Diaz regarding his language expertise, his biases, and the translation's accuracy. This is no more and no less than Defendant could have done if the original translator had taken the stand." *Curbelo* at 1275 (emphasis added). So, like the Court has done with the numerous prior efforts by the

---

[38] The defendant's right to cross examine witnesses arises from the Confrontation Clause and is constitutional in nature. *Pointer v. Texas*, 380 U.S. 400, 401 (1965). Mr. Gyetvay must be permitted to cross examine witnesses related to the subject matter of their direct examination, credibility, and bias. *See* FED. R. EVID. 611(b); *see also United States v. Baptista-Rodriguez*, 17 F.3d 1354 (11th Cir. 1994) (reversible error to prevent defendant from cross examining FBI Agent about his status as an FBI informant); *United States v. Lankford*, 955 F.2d 1545 (11th Cir. 1992) (reversible error to preclude defendant from cross examining key prosecution witnesses on their motive to please the prosecutors).

government to improperly limit Mr. Gyetvay's defense, it should deny this latest gambit to improperly limit Mr. Gyetvay's cross examination of a government witness.

### 7. Government Motion Regarding Witnesses in Courtroom[39]

The Court has ruled that both the government and the defense may have summary and expert witnesses present in the courtroom during other witness testimony.[40] The defense has argued that, while an IRS revenue agent may be present in the courtroom during the trial, the agent's testimony should be limited carefully by the Court to summarizing financial records, and not offering a summary of the government's case.[41]

### 8. Government Motion to Exclude Evidence Regarding Uncharged Individuals and Entities[42]

The Court denied without prejudice the government's motion for an order precluding argument or evidence regarding the government charging decisions related to uncharged individuals and entities.[43]

### 9. Government Motion to Preclude Evidence About My. Gyetvay's Arrest and Bail Conditions[44]

---

[39] *See* ECF No. 174.

[40] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 46:13-25 and 47:1-9. *See also* ECF No. 193.

[41] *See generally*, ECF No. 183 at 7.

[42] *See* ECF Nos. 156 and 160.

[43] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 65:9-14. *See also* ECF No. 192.

[44] *See* ECF No. 129.

The Court granted the government's motion to exclude evidence or argument about the circumstances of Mr. Gyetvay's arrest and bail conditions.[45]

### 10. Government Motion to Exclude Argument or Evidence Regarding Prior Indictments[46]

The Court granted the government's motion to exclude evidence or argument about prior indictments filed in this case but explained that "generalized questions" referencing such matters may be permissible at trial.[47]

### 11. Government Motion to Exclude Argument or Evidence Regarding Late Tax Filings and Payments[48]

The Court denied without prejudice the government's motion to preclude argument or evidence about late filings and tax payments that Mr. Gyetvay made that were not part of his Streamlined Procedures submission for tax years 2011, 2012, and 2013, and indicated that the Court would defer ruling on this issue until trial.[49]

---

[45] *See* Tr. of Oct. 5, 2023 Motion Proceedings ay 77:14-15. *See also* ECF No. 191.

[46] *See* ECF No. 129.

[47] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 67:21 – 68:15. *See also* ECF No. 191.

[48] *See* ECF No. 129.

[49] *See* Tr. of Feb. 7, 2023 Motion Proceedings at 69:23-25; Tr. of Oct. 5, 2022 Motion Proceedings at 74:11-17. *See also* ECF No. 191.

This motion was properly denied because Mr. Gyetvay's filing of tax returns at his attorneys' direction for 2009, 2010, 2014, and 2015 are directly relevant to and interwoven with the allegations of the Second Superseding Indictment. The government charged the defendant with tax evasion for the 2009 tax year yet seeks to exclude Mr. Gyetvay's filed tax return for that year and the taxes he paid for that year—which were made prior to the government's criminal investigation. In fact, Mr. Gyetvay's 2009 and 2010 tax returns were prepared in 2015 at the same time that his 2011 through 2013 returns and 2008 through 2013 FBARs were filed under the IRS Amnesty Program.

The 2014 tax return is also directly related to charges in the Second Superseding Indictment. The government charged Mr. Gyetvay relating to his 2014 FBAR yet seeks to exclude his 2014 tax return which reported all of his foreign account interests. The tax returns and payments that Mr. Gyetvay made for 2009, 2010, 2014, and 2015 are admissible at trial because they reflect his subjective intent and good faith in seeking and following legal advice with respect to his tax filings and payments. They also rebut the allegation that his prior late-filling and payment was willful. In addition to his Streamlined Procedures filings, prior to any criminal investigation, Mr. Gyetvay's lawyers instructed him to file returns for 2009, 2010, and 2014 and he did. This is clearly relevant to numerous issues at trial and the court should evaluate the

relevancy determinations on a case-by-case basis. *See United States v. Beavers*, 756 F.3d 1044, 1050 (7th Cir. 2014) (upholding the court's conditional admission of the defendant's filing of amended returns and payments).

### 12. Government Motion to Exclude Argument or Evidence Regarding Selective Prosecution[50]

The Court denied without prejudice the government's motion to exclude argument or evidence related to Mr. Gyetvay's claim that he was prosecuted selectively or vindictively.[51] The Court also denied without prejudice the government motion to exclude evidence that Mr. Gyetvay was improperly or unfairly prosecuted instead of being subjected to a civil IRS audit.[52]

### 13. Government Motion Regarding Jury Nullification[53]

The Court granted the government's motion to exclude "evidence or argument for the sole purpose of encouraging jury nullification."[54] The Court explained, however, that evidence showing that Mr. Gyetvay acted in good faith will be permitted at trial.[55]

---

[50] *See* ECF No. 129.

[51] *See* ECF No. 191.

[52] *See id. See also* Tr. of Oct. 5, 2020 Motion Proceedings at 62:12-19.

[53] *See* ECF No. 129.

[54] *See* ECF No. 191.

[55] *See* Tr. of Oct. 5, 2022 Motion Proceedings at 68:16-25, 69:1-10.

## IV.   Other Anticipated Trial Issues[56]

### 1.  Oath Holdings (Yahoo!) Emails

The government may argue that emails maintained by Oath Holdings (*i.e.*, emails from Mr. Gyetvay's Yahoo! account) are authentic pursuant to Fed. R. Evid. 902(11) and 902(13). The emails are records of regularly conducted business of Oath Holdings in the sense that Oath Holdings maintains the emails in their servers, but the actual substantive contents of the emails and/or any statements contained in the emails are inadmissible hearsay (or double hearsay) when offered for their truth. *See* Fed. R. Evid. 802, *United States v. Browne*, 834 F.3d 403, 409 (3d Cir. 2016); *cf. United States v. Siddiqui*, 235 F.3d 1318, 1323 (11th Cir. 2000) (witness testimony provided the circumstantial evidence sufficient to authenticate email correspondence between the defendant and the relevant witnesses for FRE 901).[57] Furthermore, any documents attached to any of the Oath Holdings emails also constitute inadmissible hearsay (or double hearsay) and would, in any event,

---

[56] The issues identified and discussed in this section of the Defendant's Pretrial Memorandum have not yet been briefed or argued.

[57] *See also United States v. Edwards*, 2019 U.S. Dist. LEXIS 179077, 2019 WL 5196614 (D. Kan. Oct. 15, 2019) ("But to offer any email or other online communication to prove its substantive content—content which is neither supplied nor verified respectively by Google, Blue Host, or Ebay—the government must independently authenticate the email's or content's author under Federal Rule of Evidence 901 and provide a hearsay exclusion or exception for admitting the particular communication.")

require authentication by an individual with direct and personal knowledge about the document. *See* Fed. R. Evid. 901.

On the other hand, certain emails when offered by the defendant—including emails with third parties, tax return preparers, and lawyers—can be admissible as non-hearsay when offered to show his intent, state of mind, lack of knowledge, to show their effect on the listener, and to provide context.[58]

The defense anticipates that the government will argue that instances when Mr. Gyetvay simply forwarded an email to others (sometimes with a note—*e.g.*, "see attached") should be admitted as "adoptive admissions" by Mr. Gyetvay of statements made by others in the email thread or attachments. But such instances do not qualify as adoptive admissions. *See United States v. Jenkins*, 779 F.2d 606, 612 (11th Cir. 1986) (to qualify as an adoptive admission two factors must be satisfied: (1) "the statement must be such that an innocent defendant would normally be induced to respond; and (2) there must be sufficient foundational facts from which the jury could infer that the defendant

---

[58] *E.g.*, *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) (statements not offered to prove truth of matter asserted are admissible); *United States v. Mateos*, 623 F.3d 1350 (11th Cir. 2010) (not hearsay for health care fraud defendant to introduce own statements to show she was not a knowing conspirator); *United States v. Martinez*, 83 F.3d 371 (11th Cir. 1996) (improper to exclude statements showing defendant's state of mind); *United States v. Bailey*, 270 F.3d 83, 87 (1st Cir. 2001) (out-of-court statements proffered not for their truth, but only for context, do not constitute hearsay).

heard, understood, and acquiesced in the statement.") (internal quotation marks and citation omitted).

Lastly, the government's summary witness should be barred from testifying about the meaning of any email communications he or she has reviewed because any government witness will lack personal knowledge about the contents of any of the emails (or attachments to emails) potentially at issue in this case. *See* Fed. R. Evid. 601 and 602.

### 2. "Wealth Evidence" Should Be Excluded at Trial

The defense also anticipates that the government will try and parade before the jury some evidence that Mr. Gyetvay lived a lavish lifestyle. For example, the defense is aware that the government has served trial subpoenas on an art gallery from which Mr. Gyetvay and his ex-wife purchased artwork. Offering evidence about artwork or other personal expenditures is a blatant attempt by the government to appeal to class prejudice and wrongfully paint Mr. Gyetvay as a crook who spent money on material possessions rather than paying his taxes. Such "wealth evidence" should be excluded as irrelevant under Fed. R. Evid. 401 and 402. Furthermore, such evidence has no probative value in this case, yet poses significant danger of unfair prejudice, misleading of the jury, and jury confusion and therefore, even if it were somehow relevant, wealth evidence should be excluded pursuant to Fed. R. Evid. 403.

### 3. Evidence Regarding the Government's Investigation is Relevant and Should be Permitted at Trial

There is no doubt that the case against Mr. Gyetvay is unique and rare. Indeed, the defense is aware of only a handful of cases where the Tax Division has aggressively pursued a criminal case against a taxpayer who made a voluntary disclosure about foreign accounts to the IRS, let alone a disclosure that reported all previously unreported foreign accounts and income and was processed and accepted by the IRS (the agency responsible for the administration of the amnesty programs). The government will surely protest that, as a technical matter, the Streamlined Procedures did not guarantee criminal immunity, but as a practical matter that is *exactly* what the IRS offered taxpayers.

Indeed, when the updated Streamlined Procedures program was announced, the IRS stated:

> The Internal Revenue Service announced today major changes in its offshore voluntary compliance programs, providing new options to help both taxpayers residing overseas and those residing in the United States. ***The changes are anticipated to provide thousands of people a new avenue to come into compliance with their U.S. tax obligations.***[59]

---

[59] IR-2014-73: IRS Makes Changes to Offshore Programs; Revisions Ease Burden and Help More Taxpayers Come into Compliance (June 18, 2014) available at https://www.irs.gov/pub/irs-news/IR-14-073.pdf (emphasis added) (last accessed Mar. 9, 2023).

In addition, the non-willfulness certification provided that the IRS—not the Tax Division—would review and make any decision regarding the completeness or accuracy of any Streamlined Procedures filings.[60]

Although the IRS welcomed Mr. Gyetvay into compliance, prosecutors at the Tax Division interceded and used the Streamlined Procedures amnesty program as a springboard for a criminal investigation that went on for many years and resulted in this flawed prosecution of a matter that should have resulted in, at most, a civil audit. To be sure, the timing and genesis of the government's conduct and charging decisions in this case are important, as it has long been forbidden for criminal prosecutors to use civil tax proceedings to develop criminal cases. *See United States v. Tweel*, 550 F.2d 297, 299 (5th Cir. 1977).[61]

Additionally, courts recognize this defense can be vital in ordering the government to produce "… evidence that may be used for impeachment purposes and evidence that may be used to attack the 'thoroughness and even the good faith of the investigation[.]'" *Consalvo v. Sec'y for the Dep't of Corr.*,

---

[60] "I recognize that if the Internal Revenue Service receives or discovers evidence or willfulness, fraud, or criminal conduct, it may open an examination or investigation that could lead to civil fraud penalties, FBAR penalties, information return penalties, or even referral to Criminal Investigation." Form 14653 available at (https://www.irs.gov/pub/irs-pdf/f14653.pdf) (last accessed Mar. 9, 2023).

[61] *See also* ECF No. 117 at 9.

664 F.3d 842, 845 (11th Cir. 2011) (quoting *Kyles v. Whitley*, 514 U.S. 419, 445 (1995)).[62]

Mr. Gyetvay's attempts to come into compliance and the Tax Division's use of those attempts to develop a criminal case against him are relevant to Mr. Gyetvay's state of mind and his good faith and, therefore, evidence about the government's conduct should be allowed at his trial.

***

---

[62] Indeed, the Supreme Court has long held that a criminal defendant may attack the "reliability of the investigation" at trial. *Kyles*, 514 U.S. at 446-47 ("defense could have laid the foundation for a vigorous argument that the police had been guilty of negligence"); *see also Bowen v. Maynard,* 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible *Brady* violation"); *Lindsey v. King,* 769 F.2d 1034, 1042 (5th Cir. 1985) (awarding new trial of prisoner convicted in Louisiana state court because withheld *Brady* evidence "carried within it the potential ... for the ... discrediting ... of the police methods employed in assembling the case").

Respectfully submitted,

**/s/ Kevin Downing**
Kevin Downing
(Admitted *pro hac vice*)
Law Offices of Kevin Downing
601 New Jersey Avenue NW
Suite 260
Washington, D.C. 20001
Tel: 202-754-1982
Email: kevindowning@kdowninglaw.com

**/s/ Matthew J. Mueller**
Matthew J. Mueller, FBN: 0047366
FOGARTY MUELLER HARRIS, PLLC
501 E. Kennedy Blvd.
Suite 790
Tampa, Florida 33602
Tel:   813-682-1730
Fax:   813-682-1731
Email: matt@fmhlegal.com

*Attorneys for Defendant Mark A. Gyetvay*

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, thereby serving this document on all parties of record in this case.

**/s/ Matthew J. Mueller**
Matthew J. Mueller, FBN: 0047366
*Attorney for Defendant Mark A. Gyetvay*