UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 2:21-cr-83-TPB-NPM

MARK A. GYETVAY,

    Defendant.
_____/

**DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER GRANTING THE GOVERNMENT'S MOTION TO COMPEL**

Defendant Mark Gyetvay respectfully submits the following objections under Fed. R. Crim. P. 59(a) to the Magistrate Judge's March 8, 2023, Order granting the government's motion to compel compliance with a Rule 17(c) subpoena (ECF Doc. 211) (the "Order"):

- The Order clearly errs by ignoring a material change in circumstances that (1) undercuts the Magistrate Judge's rationale for granting a Rule 17(c) subpoena (the "Subpoena"), and (2) shows that the Subpoena violates Mr. Gyetvay's Fifth Amendment rights. (ECF Doc. 211 at 3-6).

- The Order compounds the violation of Mr. Gyetvay's Fifth Amendment rights by requiring him to use the contents of his mind to make testimonial decisions about whether documents fall within the Subpoena's scope. (ECF Doc. 211 at 5-6).

- The Order clearly errs by refusing to permit discovery and an evidentiary hearing under Fed. R. Crim. P. 16. (ECF Doc. 211 at 3 n.3).

### I.    INTRODUCTION

The government persuaded the Magistrate Judge to issue the Subpoena,

1

over Mr. Gyetvay's Fifth Amendment objection, by representing that it was a "foregone conclusion" that Mr. Gyetvay or his counsel could obtain customary account records upon a simple request to Swiss bank Coutts & Co., Ltd. ("Coutts"). But what happened after the Subpoena issued, and Mr. Gyetvay's counsel made the request, showed that the government's representation was incorrect. Coutts initially refused to produce anything absent a signed, written letter from Mr. Gyetvay himself. Then the government intervened and—in communications that have not been disclosed—convinced Coutts (a cooperating witness) to change course. Thereafter, Coutts produced not only customary account records, but everything relating to the account, including internal records that it would not ordinarily share with customers.

These changed circumstances have profound implications for Mr. Gyetvay's Fifth Amendment rights. Production has a "testimonial aspect," because it implies control over documents. *United States v. Hubbell*, 530 U.S. 27, 36-37 (2000). The Magistrate Judge ordered production by characterizing the testimonial aspect of production as a "foregone conclusion," and by limiting the subpoena to "customary account records" that would be available even absent the cooperation provision in Coutts' non-prosecution agreement ("NPA").[1] ECF Doc. 130 at 8. But it was not and is not a foregone conclusion

---

[1] In the NPA, Coutts admitted to engaging in a tax fraud scheme involving more than $1 billion in assets under the bank's management.

when the government induced Coutts—a cooperator under an NPA—to provide more documents than it would ordinarily provide to customers. The implication of control that production would create is not only testimonial, but false. Mr. Gyetvay never controlled the documents at issue.

Rather than confront these changed circumstances and order discovery, the Magistrate Judge ignored them, asserting that Mr. Gyetvay erected "false constructs." ECF Doc. 211 at 1. But that view cannot be squared with the evidence before the Magistrate Judge. And the Magistrate Judge's demand that Mr. Gyetvay filter the records Coutts provided to identify documents responsive to the Subpoena compounds the Fifth Amendment problem. Such filtering would require Mr. Gyetvay to use the "contents of his own mind," implying not only control, but also an understanding of the documents and of what Coutts would ordinarily provide to its customers under Swiss law. *Hubbell*, 530 U.S. at 43.

On March 10, 2023, at the pretrial conference the government represented that the records sought pursuant to the Subpoena are essential to prove its case.[2] Mr. Gyetvay put forth credible evidence that his Fifth Amendment rights are being violated. Under these changed circumstances, this Court should order discovery with respect to the government's contacts

---

[2] The government stated that it intended to use Swiss bank records in its opening and that it would be marking Swiss bank records as exhibits.

3

with Coutts—its cooperator—and conduct an evidentiary hearing regarding the nature and extent of the government's exercise of influence over Coutts after the bank denied Mr. Gyetvay's request for records.

## II. LAW AND ARGUMENT

When reviewing the Order, this Court "must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *See Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005) (citations and quotations omitted). A magistrate judge's order "is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007) (*quoting Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

### a. The Magistrate Judge Disregarded Changed Circumstances Bearing on Mr. Gyetvay's Fifth Amendment Rights

The Magistrate Judge ignored changed circumstances that bore directly on the Subpoena's impact on Mr. Gyetvay's Fifth Amendment rights and undercut the Magistrate Judge's prior efforts to protect those rights. Neither the government nor the Magistrate Judge disputes that a material change in

4

circumstances can excuse Mr. Gyetvay's compliance with the Subpoena. *See Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir.1990); *Chairs v. Burgess*, 143 F.3d 1432, 1435-36 (11th Cir. 1998); *see also Smith v. Royal Caribbean Cruises, Ltd.*, 620 F. App'x 727, 729 (11th Cir. 2015) (changed circumstances justify reconsideration).

1. For over two years, the government has requested that Mr. Gyetvay produce records from Coutts. It did not argue that Mr. Gyetvay possesses those records, but instead that they are "available upon simple request made by Gyetvay or his counsel to Coutts." ECF Doc. 71 at 9-10. Mr. Gyetvay has argued that "the act of producing documents in response to a subpoena" has a "compelled testimonial aspect" because it "would admit that the papers existed, were in his possession or control, and were authentic." *Hubbell*, 530 U.S. at 36-37. Mr. Gyetvay **denies** that Coutts' documents are within his control.

Coutts is a cooperating witness that has entered an NPA with the government. ECF Doc. 71-4 ¶ 2. The government previously induced Coutts to produce records "as part of the bank's cooperation provision." ECF Doc. 203-4 at 3. The key issue here is that Coutts' willingness to produce documents to Mr. Gyetvay results from the government's act of control under the NPA, not Mr. Gyetvay's control. An inference of control based on Mr. Gyetvay's production of documents would thus be not only testimonial, but ***false***.

5

The government has argued that Mr. Gyetvay's control over the documents is a "foregone conclusion." *Hubbell*, 530 U.S. at 44-45. District Judge Chappell disagreed in December 2019, finding that the government "failed to meet its evidentiary burden." ECF Doc. 71-3.

2. Two years later, the government issued a new subpoena for the same documents.[3] The government relied on new evidence, including a declaration from Coutts, and the Second Circuit's decision in *United States v. Fridman*, which held that Swiss banks will produce "quintessential customary account documents" to customers. 974 F.3d 163, 177 (2d Cir. 2020). The Magistrate Judge understood the government to have narrowed the Subpoena to seek only customary account records, ostensibly to accommodate Mr. Gyetvay's rights. ECF Doc. 130 at 4, 8-9; *see* ECF Doc. 111 at 35:9-13 (government representing that customary account records available to Mr. Gyetvay "even aside from the NPA"). It specifically removed from the subpoena's scope "internal activity records" and correspondence with parties other than Mr. Gyetvay. ECF Doc. 130 at 4. The narrowing of the Subpoena, which the Magistrate Judge described as "critical[]," caused the Magistrate

---

[3] Under established law in the Eleventh Circuit, the government could have avoided the Fifth Amendment issues by serving Coutts—the cooperating witness that had possession, custody, and control of the records sought by the government—with a subpoena. *See In re Grand Jury Proceedings (Bank of Nova Scotia)*, 691 F.2d 1385 (11th Cir. 1982).

6

Judge to find that the government's new proof satisfied the foregone conclusion doctrine, and also to reject Mr. Gyetvay's Fifth Amendment argument. *See* ECF Doc. 130 at 7. Judge Barber overruled Mr. Gyetvay's objection to that decision. ECF Doc. 173.

3. What happened after Mr. Gyetvay requested records from Coutts called into question the factual and legal basis for the Magistrate Judge's decision under the foregone conclusion doctrine. Mr. Gyetvay wrote to Coutts to request production of the documents identified in the Subpoena, while noting his objection.[4] ECF Doc. 203-1. In response, Coutts' U.S. counsel refused to produce anything unless Mr. Gyetvay submitted more information and personally signed a request reflecting his "wish[]" that Coutts send him specific "types of records" from a specific "account" and "time frame." ECF Doc. 200-2. That called into question the government's representation that the records were "available upon simple request made by Gyetvay or his counsel to Coutts." ECF Doc. 71 at 9-10. The statement Coutts demanded would not only have made any subsequent production undeniably testimonial, but would have itself created a compelled signed statement by Mr. Gyetvay that could be furnished

---

[4] Mr. Gyetvay's request for records included ECF references to the pleadings and Court Orders relating to this issue as well as a reservation of rights with respect to any production. The Supreme Court has long permitted "carefully drafted" letters designed to preserve rights and objections under the Fifth Amendment. *See, e.g., Doe v. United States*, 487 U.S. 201, 215 (1988); *United States v. Ghidoni*, 732 F.2d 814, 816 & n.1 (11th Cir. 1984).

to the government (and to which the foregone conclusion doctrine would not apply, ECF Doc. 203 at 8).

Weeks after that initial refusal, the **government** suddenly informed Mr. Gyetvay that Coutts' Swiss counsel would soon produce "a complete set of the [account] records," *i.e.*, **more** than the Subpoena had sought. *See* ECF Doc. 203-2 at 2 (email dated Feb. 16, 2023). That raised questions about why the government knew that Coutts intended to produce documents before Mr. Gyetvay (who purportedly made the request); why Coutts was producing a "complete" set of records (rather than the itemized records the Subpoena sought); what the government had done to change Coutts' initial response; and whose "control" had really caused the production. The government later admitted to communicating with Coutts and receiving information about Coutts' production before Mr. Gyetvay or his counsel. *See* ECF Doc. 203-2 at 1-2 (emails dated Feb. 16, 18, 2023); ECF Doc. 207-1 (email dated Jan. 27, 2023). But it neither confirmed nor denied whether it invoked the NPA to cause Coutts to produce the records. ECF Doc. 207.

That sequence of events undermines the factual foundation on which the Magistrate Judge built his decision to grant the Subpoena in the first place: namely, the finding that Mr. Gyetvay had control of the subpoenaed documents, and that they were documents Coutts would produce to him even absent government pressure under a non-prosecution agreement. *See* ECF

Doc. 130 at 8-9. The Magistrate Judge permitted the Subpoena because he determined it was a foregone conclusion that Mr. Gyetvay could obtain specified "customary" documents. That same rationale could not be invoked to cause Mr. Gyetvay to produce a "complete" set of account documents after his request did not succeed in obtaining any documents (until the Government intervened). The timing and content of Coutts' production provide a reasonable basis for Mr. Gyetvay's belief that the production resulted from the government's power to pressure Coutts under the NPA, not his request.

4. The Magistrate Judge denied that changed circumstances existed, faulting Mr. Gyetvay for erecting "false constructs." ECF Doc. 211 at 1. The Order based that assertion on two clearly erroneous factual findings.

First, the Magistrate Judge found that Coutts' U.S. counsel had not "refused to produce any records" to Mr. Gyetvay. ECF Doc. 211 at 4. But the letter from Coutts' U.S. counsel plainly shows such refusal. ECF Doc. 200-2. Mr. Gyetvay informed Coutts that he had "been compelled by the District Court to request the Coutts records described in the Subpoena," which was attached. ECF Doc. 203-3 at 2-4. Coutts' U.S. counsel responded:

> [I]f your client, Mr. Gyetvay, wishes to obtain account records from Coutts, Coutts will need a written request, signed by Mr. Gyetvay, specifying the account and the scope of records he is requesting, including the time frame and types of records.

ECF Doc. 200-2. That response outlined specific steps Mr. Gyetvay needed to

9

take to get records.[5] *Id.* Such instructions were necessary only if Coutts was refusing to produce documents based on the steps Mr. Gyetvay **had already taken**. The letter from Coutts' U.S. counsel also contains no indication that Coutts would continue to consider the request previously submitted. The government later conceded that Coutts revisited its decision regarding the documents **only** because the government intervened, ECF Doc. 207-1, but the government failed to provide a full account of the communications in which it did so.

The Magistrate Judge's finding that "Coutts never refused to produce documents," ECF Doc. 211 at 4, is clearly erroneous. It cannot be reconciled with the letter from Coutts' U.S. counsel or the broader evidentiary record before the Magistrate Judge. Coutts took the position that it would not provide records unless Mr. Gyetvay took specific, testimonial actions. It changed its position only when the government intervened and communicated something—possibly threats or demands under the NPA—that has not yet been disclosed. Moreover, when Coutts changed its position, it informed the government (as if responding to **its** request), and allowed Mr. Gyetvay to learn of that change from the government.

Second, the Order clearly erred by finding that it was "speculation"—

---

[5] The reason for those demands by Coutts is obvious under Swiss law, which does not recognize compelled consent as valid. ECF Doc. 203 at 7.

10

"mere guesswork"—for Mr. Gyetvay to claim the Coutts' production would include a "universe" of documents "broader than whatever documents the bank would normally provide to clients." ECF Doc. 211 at 4-5. Mr. Gyetvay had to rely on inferences because he had **not yet received** the production when the government moved to compel—the government had only told him the production would arrive. ECF Doc. 203-2 at 2 (email dated Feb. 16, 2023); *see also* ECF Doc. 200 at 2 ("the Defendant is—or will within days be—in possession of all the records called for by the Subpoena").

But Mr. Gyetvay's inferences were sound. The government informed him that Coutts would transmit "a complete set of the Felicis records, which would include the documents responsive to the subpoena." *Id.* "Include" means to "contain as part of something." *Include*, Black's Law Dictionary (11th ed. 2019); *Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008). The "documents responsive to the subpoena" were thus only part of the "complete set" of records Coutts was suddenly providing. Coutts used the same language, informing Mr. Gyetvay that it was producing "all existing documents and other documents relating to the account," which "includes all documents that the bank normally provides to clients." ECF Doc. 200-3. That language again uses the word, "includes," to indicate that the "documents that the bank normally provides to clients" are only part of the set of "all existing documents."

The Magistrate Judge's contrary conclusion is clearly erroneous. The

11

Magistrate Judge described the Coutts letter as "ambiguous" and "nonsensical" insofar as it "suggests" that Coutts might produce other, "nonexistent documents." ECF Doc. 211 at 5 & n.5. But whatever the limits of Swiss counsel's letter, the phrase "all existing documents" is not ambiguous. It means everything. It is not limited to the customary account records the Subpoena described. The Magistrate Judge also ignored the email from the government, which described the production as a "a complete set of the Felicis records," including but not limited to "the documents responsive to the subpoena." ECF Doc. 203-2 at 2. It was clear error for the Magistrate Judge to disclaim his ability to interpret one letter and overlook another that provided even clearer support for Mr. Gyetvay's interpretation.

Regardless, Mr. Gyetvay has now received the documents and can confirm that they include records that fall outside the scope of the Subpoena. The Magistrate Judge specifically narrowed the Subpoena to exclude "internal activity records" and limit the "request for account correspondence to those between Gyetvay and Coutts," describing that narrowing as "[c]ritical[]." ECF Doc. 130 at 4, 8. Coutts' production includes internal activity records, internal Coutts correspondence, and correspondence between Coutts and addressees other than Mr. Gyetvay. Had the Magistrate Judge granted Mr. Gyetvay's request to file a sur-reply or for a hearing, it would have learned that Mr. Gyetvay's prediction of what Coutts would produce was neither "speculation"

nor "mere guesswork." It was correct.

The Magistrate Judge's clearly erroneous factual findings denied the existence of changed circumstances. But a correct view of the facts shows that circumstances have changed and that those changes undercut the Magistrate Judge's prior decision under the Fifth Amendment. Coutts' refusal to produce documents, and subsequent about-face, shows that it is being controlled by the government, not Mr. Gyetvay. Its production of a "complete set" of account documents confirms that fact. Coutts has produced records to Mr. Gyetvay that it would **not** normally provide to clients. ECF Doc. 203 at 7; ECF Doc. 141-3. It was never a "foregone conclusion" the Coutts would provide such records. Forcing Mr. Gyetvay to produce them would have "compelled testimonial aspect," *falsely* suggesting that the records "were in his possession or control, and were authentic." *Hubbell*, 530 U.S. at 36-37. The Magistrate Judge's rationale is thus clearly erroneous as a matter of fact and law.

The government, under the Magistrate Judge's rationale, has foisted third party records onto Mr. Gyetvay and can now claim that all account records are in his custody and control, when they were not. Moreover, nothing prohibits the government from serving Mr. Gyetvay with a new subpoena for all existing records provided to him by Coutts. All in violation of Mr. Gyetvay's Fifth Amendment rights.

Finally, Mr. Gyetvay preserved in his opposition to the government's

motion—and now further preserves—his argument that, regardless of changed circumstances, the Court should not enforce the Subpoena and order granting it because they are invalid and violate Mr. Gyetvay's Fifth Amendment rights.[6] *See* ECF Doc. 203 at 16; ECF Docs. 82, 94, 111, 141, 198. The Order should have denied the government's motion for that reason as well.

### b. The Order Erroneously Required Mr. Gyetvay To Use the Contents of His Mind in Violation of the Fifth Amendment

The Order further held, in the alternative, that "[e]ven if" Mr. Gyetvay were right (as he is) that Coutts produced documents beyond those identified in the Subpoena, Mr. Gyetvay "need only produce what the subpoena specifically commands." ECF Doc. 211 at 6. But that reasoning violates the Fifth Amendment, which forbids the government from forcing Mr. Gyetvay to "make extensive use of 'the contents of his own mind' in identifying the hundreds of documents responsive to the requests in the subpoena." *Hubbell*, 530 U.S. at 43 (quoting *Curcio v. United States*, 354 U.S. 118, 128 (1957)). "The assembly of those documents [is] like telling an inquisitor the combination to a wall safe," *id.*, as Mr. Gyetvay explained to the Magistrate Judge, ECF Doc. 203 at 15 n.6. The Order offers no response.

---

[6] Indeed, there is good reason to think that at least some of the documents the Magistrate Judge originally permitted to be included in the Subpoena are not in fact customary account records. *See* ECF Doc. 141-3. The Magistrate Judge clearly erred by refusing to consider that evidence.

The documents included in Coutts' production prove that the Order violates Mr. Gyetvay's Fifth Amendment rights. The Magistrate Judge narrowed the Subpoena to seek only correspondence between Coutts and Mr. Gyetvay. ECF Doc. 130 at 4. But the documents Coutts produced include letters that list no addressees and make no reference to Mr. Gyetvay. Determining whether such correspondence is "between Gyetvay and Coutts," ECF Doc. 130 at 4, will make extensive use of the contents of Mr. Gyetvay's mind, *Hubbell*, 530 U.S. at 43.[7] Any production of such correspondence in response to the Subpoena could be interpreted as an ***admission*** that he received the correspondence. And that is only one of many interpretive choices Mr. Gyetvay or his counsel must make, all subject to pain of contempt, when deciding whether hundreds of pages of documents fall within the Subpoena's nine categories. The Fifth Amendment prohibits the government from requiring such testimonial acts. *Hubbell*, 530 U.S. at 36-37.

Coutts' decision to produce all account documents is a changed circumstance that bears on Mr. Gyetvay's Fifth Amendment rights. Requiring Mr. Gyetvay or his counsel to filter documents, rather than merely relay them, does not resolve the Fifth Amendment problem. It compounds it.

---

[7] That is true even if Mr. Gyetvay's counsel determines what to produce based on their understanding of the contents of his mind. The testimonial act of production will still be imputed to Mr. Gyetvay.

15

### c. The Magistrate Judge Erroneously Denied the Defense Rule 16(a) Discovery and an Evidentiary Hearing

The Order also erroneously rejected Mr. Gyetvay's request for Rule 16(a) discovery. ECF Doc. 211 at 3 n.3. Mr. Gyetvay's desire to understand what the government had done to induce Coutts to produce more documents than the Subpoena requested was well-grounded in the evidence and intertwined with his need to defend himself (and his Fifth Amendment rights) from the inferences any production might create. The Magistrate Judge's dismissal of that request as "speculative" and "[ir]relevant" was clear error.

First, the Order was wrong to deny the requested relief as procedurally improper because it was not "by motion." ECF Doc. 211 at 3 n.3. A "motion" is simply a request for relief "in writing" that "state[s] the grounds on which it is based and the relief or order sought." Fed. R. Crim. P. 47(b); *see Melendez v. United States*, 518 U.S. 120, 126 (1996) ("[T]he term 'motion' generally means '[a]n application made to a court or judge for purpose of obtaining a rule or order directing some act to be done in favor of the applicant.'"). Here, the brief at issue was styled as a response "***and cross-motion***," and contained a request for such relief. *See* ECF Doc. 203. It thus should have been treated as a motion.[8]

---

[8] *See Colony Ins. Co. v. MagneGas Welding Supply-Se., LLC.*, No. 8:20-CV-2775-VMC-AAS, 2021 WL 3077870, at *2 (M.D. Fla. July 21, 2021) (treating cross-motion included in a response to a motion for summary judgment as a motion); *Pinto v. Collier Cnty.*, No. 2:19-CV-551-JLB-MRM, 2021 WL 533556,

16

Second, the Order clearly erred in finding that the relief was unavailable on the merits. Mr. Gyetvay was not seeking to use the discovery as a "sword," ECF Doc. 211 at 3 n.3, but rather the very "shield" Rule 16 is designed to provide. Fifth Amendment rights are an important component of any defense in a criminal case. Protection of the right ***not*** to testify can hardly be considered a "sword." Moreover, Mr. Gyetvay expects that the government will discuss his production of documents from Coutts to impute to him control over the account, and perhaps even knowledge of the documents. Nothing in the Magistrate Judge's Order precludes the government from making such arguments. Proof that the government manufactured an appearance of control by pressuring Coutts to produce documents would enable Mr. Gyetvay to defend himself against that allegation. The requested discovery is thus essential to Mr. Gyetvay's defense.

The Order's contrary finding is clearly erroneous. It will prejudice Mr. Gyetvay's constitutional right to present a defense in the event the government

---

at *1 (M.D. Fla. Feb. 12, 2021) (holding that a Magistrate Judge properly permitted a party to "file a single brief that combines both his response to [a] motion[] for summary judgment and his cross-motion for summary judgment").

Even if the Order could have found combining the cross-motion and response procedurally improper, the remedy should have been to deny the motion without prejudice to permit Mr. Gyetvay to refile his application as a separate motion. *See United States v. Brown*, 599 F. Supp. 3d 1178, 1183 (M.D. Fla. 2022) (denying without prejudice a request in a response brief not styled as a cross-motion).

in fact seeks to introduce evidence of Mr. Gyetvay's control over these documents. In light of the Fifth Amendment issues and the government's representation that the records are essential to its case, discovery and a pre-trial evidentiary hearing are warranted.

### III. CONCLUSION

The Order improperly granted the government's motion to compel compliance with the Rule 17(c) subpoena and related orders. This Court should set that Order aside and deny the government's motion or, at the minimum, permit discovery and an evidentiary hearing under Rule 16(a).

Respectfully submitted,

**/s/ Kevin Downing**
Kevin Downing
(Admitted *pro hac vice*)
Law Offices of Kevin Downing
601 New Jersey Avenue NW
Suite 260
Washington, D.C. 20001
Tel: 202-754-1982
Email: kevindowning@kdowninglaw.com

**/s/ Matthew J. Mueller**
Matthew J. Mueller, FBN: 0047366
FOGARTY MUELLER HARRIS, PLLC
501 E. Kennedy Blvd.
Suite 790
Tampa, Florida 33602
Tel:  813-682-1730
Fax:  813-682-1731
Email: matt@fmhlegal.com

*Attorneys for Defendant Mark A. Gyetvay*

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2023, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, thereby serving this document on all parties of record in this case.

**/s/ Matthew J. Mueller**
Matthew J. Mueller, FBN: 0047366
*Attorney for Defendant Mark A. Gyetvay*
