# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

UNITED STATES OF AMERICA

    v.                                     Case No. 2:21-cr-83-TPB-NPM

MARK A. GYETVAY

## RESPONSE TO DEFENDANT'S RULE 29 MOTION

The Government respectfully submits the following in response to the defendant's Motion for Judgment of Acquittal. The Government will supplement this response orally to the extent requested by the Court.

### I. False Streamline Filing

The defendant argues that because the defendant consulted with counsel in preparing his Streamlined filing, no reasonable juror could find the defendant guilty of this charge. This is wrong. The defendant certainly knew whether the explanation he provided on the form was true or false. The fact that his attorney drafted the statement is of no matter, particularly when that attorney sent it to the defendant and asked him to review it, specifically saying "particularly if I have misstated any of the facts." Government's Exhibit 73.

The Court should deny the defendant's motion for two reasons. First, there was plenty of evidence that the defendant's statement of non-willfulness contained at least two lies. The defendant claimed that he "endeavored to regularly file U.S. tax returns." The tax returns and transcripts in evidence alone prove that this statement

was false.  By the time the defendant filed the false Streamlined document, he had failed to timely file his 2009 through 2014 tax returns.  His 2009 return was nearly five years late.  Before that, the defendant filed his 2005-2008 returns years late as well.  This pattern of behavior clearly belies his claimed efforts.  The defendant also claimed to have "difficulty in finding qualified US tax preparers."  The jury heard from two of the defendant's previous accountants who both established that their practices were well versed in preparing tax returns for citizens working abroad.  Transcript March 22, 2023 at 34-36; 143: 16-24.

Second, the question of materiality is an issue for the jury.  *See United States v. Gaudin*, 515 U.S. 506, 523 (1995); *United States v. Boffil-Rivera*, 607 F.3d 736, 741 ("the question of 'materiality' must be submitted to the jury").

## II.   Wire Fraud Counts

The defendant argues that the Government's wire fraud charges are deficient because "Mr. Gyetvay did not intend to take any property or money 'out of' the hands of the United States government."  Doc. 256 at 13-14.  The defendant is taking the position that the Government must prove that the defendant intended to effectively reach into the Government's coffers to take money, or, at the very least, deceptively cause the Government to send him money that he was not entitled to.  In the context of tax returns, this could occur if a fraudster caused the Government to issue him a tax refund that he was not due.  The defendant's argument completely misses the mark.

The Supreme Court has made it clear that the "property" referred to in the wire fraud statute includes the right to uncollected taxes.  The defendants in *Pasquantino v.*

*United States*, 544 U.S. 349 (2005), appealed their wire fraud conviction on multiple bases, including that the Government did not prove that they intended to deprive the Canadian government out of money or property. The defendants in *Pasquantino* engaged in a scheme to smuggle liquor into Canada to avoid paying Canada's excise tax on imported alcohol. In addressing the money or property argument, the Court held:

> Canada's right to uncollected excise taxes on the liquor petitioners imported into Canada is "property" in its hands. This right is an entitlement to collect money from petitioners, the possession of which is "something of value" to the Government of Canada…. Had petitioners complied with this legal obligation, they would have paid money to Canada. Petitioners' tax evasion deprived Canada of that money, inflicting an economic injury no less than had they embezzled funds from the Canadian treasury. The object of the petitioners' scheme was to deprive Canada of money legally due, and their scheme thereby had as its object the deprivation of Canada's "property."

*Id.* at 355-56; *see also Fountain v. United* States, 357 F.3d 250, 260 (2d Cir. 2004) (noting the "consensus that taxes owed to a government – whether state, federal, or foreign – are property in the hands of that government"); United *States v. Bucey*, 876 F.2d 1297, 1309-1310 (7th Cir. 1989) (after noting that the Supreme Court has made it clear that a scheme to defraud can concern intangible property as well as tangible property, concluding that "the fact that the government's interest in unpaid taxes is intangible is no definitive obstacle to a mail or wire fraud conviction" and "[affirming] the determination of the district court that the allegation in the indictment charging Bucey with devising a scheme 'to defraud the United States of money and property, that is, income taxes' satisfies the *McNally* 'money or property' requirement"); *United States v.*

3

*Herron*, 825 F.2d 50, 56 (5th Cir. 1987) ("Certainly a scheme to defraud the United States of taxes would meet the 'money or property' requirement").

The Court's decision in *Kelly v. United States*, 140 S. Ct. 1565 (2020), does not affect this case at all. The *Kelly* decision did not change the Court's understanding of the definition of "property" as it is used in the wire fraud statute. Rather, the Court in *Kelly* concluded that the object of the scheme in that particular case was not to deprive the Port Authority of property. *Id.* at 1574. The defendant cites this case favorably. However, the case actually underscores the Government's point. The Court provided the following hypotheticals as examples of schemes to defraud a government out of property:

> Suppose that a mayor uses deception to get "on-the-clock city workers" to renovate his daughter's new home… Or imagine that a city parks commissioner induces his employees into doing gardening work for political contributors… the cost of those employees' services would qualify as an economic loss to a city, sufficient to meet the federal fraud statutes' property requirement… No less than if the official took cash out of the city's bank account would he have deprived the city of a "valuable entitlement."

*Id.* at 1573. As both *Pasquantino* and *Kelly* make entirely clear, wire fraud does not require the Government to prove that the defendant took money or property directly out of its hands.[1]

---

[1] The Court in *United States v. Gatto*, 986 F.3d 104, 113-14 (2d Cir. 2021), a case decided after *Kelly*, noted the following:

> As to the "object of the scheme" element, a defendant need not literally obtain money or property – in the sense of putting money into his own pocket – to violate the wire fraud statute. *See Porcelli v. United States*, 404 F.3d 157, 162-63 (2d Cir. 2005) (finding it was sufficient to convict defendant of wire

4

The defendant improperly characterizes the wire fraud counts in this case as schemes to defraud the IRS solely by filing a false Streamlined submission and filing an incomplete FBAR. However, those are wires he used in furtherance of a larger scheme to defraud the IRS out of taxes that stretched from at least 2005 to 2015. And, the Government charged it as such. The defendant engaged in a years' long scheme to defraud the Government out of taxes. Just as the Canadian government had a property interest in the uncollected taxes, so too did the United States have a property interest in the defendant's unpaid taxes. He filed false tax returns, failed to file others, and failed to disclose secret Swiss bank accounts that generated significant dividend and interest income. He also filed a false Streamlined Procedures submission, seeking to avoid significant tax return-related penalties that would have otherwise applied absent this submission. The two wires as reflected in Counts 14 and 15 were used in furtherance of this scheme.

### III.  Venue

The defendant argues that the Government failed to prove for each count of the indictment. Below is a discussion of the evidence supporting venue for each count.

####   A.   26 U.S.C. § 7206(2) counts

Venue has been established for Counts 1-3 because the defendant assisted with the preparation of his false tax returns while in the Middle District of Florida. For the 2006 and 2008 tax years, the filed copies of the returns (Government Exhibits 12 and

---

fraud where the tax scheme involved him *keeping* money he already had by virtue of his not paying taxes).

16) bear postage stamps that show that they were mailed from Naples, Florida. The return preparer, Alex Knight, lived and worked in Atlanta. This mailing satisfies venue for each return.

For the 2007 tax return, the IRS no longer had the filed copy. However, evidence presented through exhibits and the testimony of Alex Knight show that the defendant answered questions regarding the preparation of that return while in Florida, and he also most likely mailed it from there as well. The accounting firm's retained copy of the 2007 return was addressed to the defendant at his Naples address, and the cover letter said "enclosed is your 2007 income tax return. The return should be signed and dated by both taxpayer and spouse… Mail to Internal Revenue Service." Government's Exhibit 189. Alex Knight also testified that he would have sent the tax return to the address in the transmittal letter. Transcript May 22, 2023 at 83: 19-21. Government's Exhibit 188, pages 2-3, also contained an email exchange between the accounting firm and the defendant. The defendant responds to some questions regarding tax preparation on May 25, 2011. *See also* Transcript May 22, 2023 at 75-77. The travel evidence, specifically records from Delta airlines as shown in Government's Exhibits 166 and 169, shows that the defendant traveled to Ft. Myers (airport code RSW) on May 21, 2011, and he did not leave the country again until June 20, 2011.

      **B.**     **26 U.S.C. § 7021 counts**

Venue for the 2007 and 2008 tax evasion counts is established by the same evidence as discussed above. Regarding the 2009 tax evasion count, the Government

has alleged that the defendant's filing of the false Streamlined submission was an affirmative act of evasion for his 2009 return. As reflected in Government's Exhibit 73, the defendant confirmed the accuracy of his non-willfulness statement when asked by an Anaford attorney. Government's Exhibit 74 is an email where the defendant tells an auto repair shop that he is on his way to pick of his BMW. He sends this email less than 2 hours before he sends the email in Government's Exhibit 73. Additionally, travel records show the defendant coming into the country on June 12, 2015 and not leaving again until July 20, 2015. Delta records from Government's Exhibit 166 (page 278) show that the defendant left from RSW on July 20.

    **C.**    **26 U.S.C. § 7203 counts**

Venue for Section 7203 charges is also proper in the Middle District of Florida. *United States v. Hicks*, 947 F.2d 1356, 1361 (9th Cir. 1991) ("Failure to file a tax return is an offense either at the defendant's place of residence, or at the collection point where the return should have been filed"); *United States v. Rice*, 659 F.2d 524, 526 (5th Cir. 1981); *United States v. Quimby*, 636 F.2d 86, 89-90 (5th Cir. 1981). Ample evidence presented at trial showed that the defendant maintained a residence in Naples, Florida during tax years 2010-2014. Travel records showed him flying into RSW on many occasions. Ms. Gavrilova testified that she permanently moved to Naples in 2010 and that she lived there with her then-husband. They purchased another residence in the Naples area as well. According to Ms. Gavrilova's application for naturalization as a U.S. citizen, she lists her residence as Naples Florida since January 2010. She signed

the document in December 2013 and later signed it again in April 2014 after she is interviewed by a Customs Agent.  Government's Exhibit 250e.

### D.   18 U.S.C. §§ 1001 & 2 count

The proof of venue for this charge is the same as the 2009 tax evasion count

### E.   Failure to File FBAR count

Venue for the recommended charges in violation of 31 U.S.C. § 5322 for Gyetvay's filing of false FBARs is also proper in the Middle District of Florida.  This charge has proper venue in any district, so long as constitutional safeguards are not violated.  *See United States v. Bradley*, 644 F.3d 1213, 1252-53 (11th Cir. 2011).  In *Bradley*, the court noted that the FBAR form allows for the filing in "any local office" of the IRS.  Therefore, for venue purposes, "the form is required to be filed in any and every district that houses a local IRS office."  The court concluded that "so long as its choice does not create a constitutional hardship, the Government may choose, from among those districts, one where it is most convenient to pursue an indictment."  *Id.* There appears to be little concern over arguments of constitutional hardship resulting from venue in the Middle District of Florida as venue is proper there for the other offenses.  Additionally, as noted above the 2009 tax evasion and 1001 false statement charge, the defendant was home when he submitted this FBAR.  As further proof, on June 24, 2015, one day before filing the FBAR that did not disclose one account, the defendant writes in an email that "I am actually in Florida right now."  Government Exhibit 153.

### F. Wire Fraud Counts

The provisions of 18 U.S.C. § 3237(a) apply to wire fraud charges, such that prosecutions may be instituted in any district in which an interstate transmission was issued or terminated. *See United States v. Goldberg*, 830 F.2d 459, 465 (3d Cir. 1987) (Section 1343 is a continuing offense under 18 U.S.C. § 3237 "so that venue is proper in any district in which the offenses were begun, continued, or completed."). The proof of venue for Count 14 is the same as noted above under the FBAR count. The proof of venue for Count 15 is the same as the 2009 tax evasion count and the § 1001 count.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

STUART M. GOLDBERG
Acting Deputy Assistant Attorney General
for Criminal Matters
Department of Justice—Tax Division

By:   *Kevin Schneider*
Stanley J. Okula, Jr.
Senior Litigation Counsel
David Zisserson
Assistant Chief
Kevin Schneider
Trial Attorney
(202) 616-3427
Kevin.schneider@usdoj.gov

## Certificate of Service

I certify that on March 27, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

*Kevin Schneider*
Trial Attorney
U.S. Department of Justice, Tax Division